GARWOOD, Circuit Judge:
 

 Defendant Caddell appeals the revocation of his probation for failure to comply with one of its conditions, namely, that he make restitution. We affirm.
 

 Caddell was charged in a three-count information with violations of 18 U.S.C. § 658. In July 1985, he pleaded guilty to count three which alleged that in December 1980 he, “with intent to defraud, did knowingly ... convert to his own use and to that of another, property mortgaged and pledged to the Farmer’s Home Administration....” The plea agreement called for the other two counts to be dismissed, and the government also agreed not to prosecute any of Caddell’s family in respect to the matters alleged in the information. At the guilty plea hearing, the government recited that on the occasion in question Caddell had sold 407 head of cattle for $259,000, and received out of this net pro
 
 *38
 
 ceeds of $165,000; these cattle were mortgaged to the Farmer’s Home Administration, which did not consent to the sale, and no part of the proceeds of the sale were applied on the debt. Caddell agreed that this was correct. Count three of the information was read in open court, and Caddell admitted that that was what he had done. It was also evident from the context of the proceedings that Caddell was the debtor on the mortgage to the Farmer’s Home Administration.
 

 Caddell appeared before the court for sentencing on October 10, 1985, and was sentenced to one year’s confinement. The court suspended execution of the sentence and placed Caddell on probation, with supervision, for three years. As a special condition of the probation, he was ordered to make restitution to the Department of Agriculture, through the Farmer's Home Administration, of the $165,000, the restitution to be made during the first year of probation, by payment to the district clerk. The first two counts of the information were thereupon dismissed. On November 24, 1986, the probation officer filed a petition for revocation of probation on the ground that Caddell had failed to make any payments toward restitution. A hearing was had on this motion on December 22, 1986, and a further hearing on April 3, 1987. Following the latter hearing, the district court revoked the probation and ordered Caddell committed to the custody of the attorney general for the one-year term provided for in the original October 10, 1985 sentence. Caddell brings this appeal from the order of revocation.
 

 One of the issues Caddell asserts in his appeal is whether the court’s power to impose conditions of restitution is controlled by the Victim and Witness Protection Act of 1982, 18 U.S.C. § 3579
 
 et seq.,
 
 or by the general probation statute, 18 U.S.C. § 3651. Caddell implicitly argues that the latter statute controls because the former was not in effect when the offense was committed. However, this is really not an issue at all, inasmuch as the district court’s oral pronouncement of sentence and its written judgment and probation/commitment order both expressly reflect that the court acted under section 3651, which specifically authorizes, as a condition of probation, that the defendant “be required to make restitution ... to aggrieved parties.” This Court has expressly recognized that power.
 
 See, e.g., United States v. Turner,
 
 741 F.2d 696 (5th Cir.1984). Cad-dell contends that the restitution condition was improper because the amount of the loss was not alleged in the information and restitution was not a part of the plea bargain, citing
 
 United States v. Whitney,
 
 785 F.2d 824 (9th Cir.1986), and
 
 United States v. Ferrera,
 
 746 F.2d 908 (1st Cir.1984). Caddell does not, however, seek to withdraw his plea or claim that it was improper or that there was any breach of the plea agreement. Indeed, we observe that there is nothing whatever in the plea agreement that Caddell would or would not receive probation, or that if he did receive probation it would be without a restitutory condition. Nor did the plea agreement in any way prevent Caddell’s sentence to one year’s confinement. Under the plea agreement, Caddell could plainly receive any sentence not exceeding the maximum for the offense. Since his probation was revoked, Caddell is merely required to serve the one-year sentence originally imposed, and he is no longer under any restitutory obligation by virtue of the instant proceedings.
 
 See United States v. Irvin,
 
 820 F.2d 110 (5th Cir.1987). Because Caddell did not attack the restitutory condition of his probation by appeal from his sentence or by motion under Rule 35, Fed.R.Crim.P., he is foreclosed from attacking it on appeal from the order revoking his probation.
 
 Irvin, supra.
 

 [1]
 

 Caddell’s remaining contentions urge that the revocation was improper. He points to the fact that he has been in Chapter 11, as a debtor in possession, apparently ever since sometime prior to his sentenc
 
 *39
 
 ing although after the offense in question. He contends that the district court’s restitution order illegally required him to divert funds from the Chapter 11 estate without bankruptcy court approval and impermissi-bly preferred Farmer’s Home Administration as a creditor. We disagree. First, the ■ automatic stay in bankruptcy does not bar “the commencement or continuation of a criminal action or proceeding against the debtor....” 11 U.S.C. § 362(a)(1). The district court’s authority to sentence Cad-dell was in no way hampered by his reorganization proceeding. Second, as the Supreme Court held in
 
 Kelly v. Robinson,
 
 — U.S. -, 107 S.Ct. 353, 93 L.Ed.2d 216 (1986), there is no principled distinction, applicable in bankruptcy proceedings, between the imposition of restitution and other types of fines by criminal sentencing authorities. While we recognize that
 
 Kelly
 
 dealt with dischargeability and was partially influenced by federalism concerns,
 
 id.
 
 107 S.Ct. at 358-60, the language in the opinion extends generally to penal sanctions of restitution without regard to whether the court imposing the sanction is a state or federal court.
 
 Id.
 
 at 362. Consequently, the specific authority of the district court to impose restitution upon Cad-dell as a condition of probation cannot be doubted. That such restitution, if it had been paid, might have benefited Farmer’s Home Administration ahead of other creditors, is a consideration squarely precluded by the rationale of
 
 Kelly.
 
 We conclude that Caddell’s status as a Chapter 11 debt- or in possession does not of itself discharge or suspend the restitutory condition of his probation so as to automatically prevent revocation of the probation for failure to comply with that condition.
 
 [2]
 

 Turning to the facts here, it was stipulated at the revocation hearing that Caddell had not at any time made any restitutory payments whatever. Nor had he ever requested any extension or modification of that condition, or previously sought to inform the court that he would not be able to comply. Caddell argues that he was unable to make restitution, and that hence revocation for his failure to do so violated his constitutional rights under
 
 Bearden v. Georgia,
 
 461 U.S. 660, 103 S.Ct. 2064, 76 L.Ed.2d 221 (1983), or at the least constituted an abuse of discretion. We disagree.
 
 Bearden
 
 held that “in revocation proceedings for failure to pay a fine or restitution, a sentencing court must inquire into the reasons for the failure to pay. If the probationer willfully refused to pay or failed to make sufficient bona fide efforts ..., the court may revoke probation.... If the probationer could not pay despite sufficient bona fide efforts ..., the court must consider alternative measures....”
 
 Id.
 
 103 S.Ct. at 2073.
 
 [3]
 

 Here the district court did inquire into Caddell’s reasons for not making any restitution payment. Among other things, it was shown that as of five days after Cad-dell entered his plea of guilty he had $149,-000 in the bank. Caddell was rather vague and evasive in testifying as to what happened to this money, although asserting that he generally thought it went back into his cattle raising business. No detailed explanation was ever furnished. Caddell was also vague about his wife’s property and income (the latter being their community property, though subject to her control). He said “[s]he may have some rent houses” and “we’re talking about a small house that might be worth, I don’t know, $5,000.” Although he lived with his wife and signed a joint return with her, he was evasive as to what her income was. He would not deny that it was approximately $32,000 for
 
 *40
 
 1985. Caddell testified that his wife’s income was used for their living expenses. His wife later testified that, in her capacity as a rural mail carrier, she received every two weeks a check for $1,022, of which $279 was for an automobile expense allowance. There, was no testimony as to what other receipts she might have had, such as income from rent houses. There was testimony that her income and assets were not subject to the Chapter 11 proceedings. Caddell in essence admitted that in 1985 his farming operation had a net profit of $55,-000. He also admitted that for the ten-month period from November 1985 to August 1986 it “could very well be” that the farming operation had grossed $291,000 before expenses. There was no evidence as to what the expenses amounted to, even approximately. Net farming income for the month of August 1986, after deductions for expenses including “medical” and “cash and personal expense,” was shown to be approximately $5,500. Caddell did not introduce other evidence of his (or his wife’s) income or expenses. Nor was evidence introduced as to his assets, except that he did have approximately 1,500 acres, and may have leased more, together with unspecified improvements and farming equipment, and possibly cattle, and that this was, with the possible exception of 200 homestead acres and improvements, secured by a first lien to the Farmer’s Home Administration. There was an indication that the secured assets might be worth something in excess of one million dollars, but would not currently sell for the amount of the debt. However, this evidence was rather vague. When asked whether his 1985 gross income was $425,000, Caddell replied, "I’d have to see some of those materials, under advice of counsel, and look at them.” He did not introduce his tax returns, any written statements of assets, income, or expenses, or any financial or accounting data or records. He attempted no explanation of why he did not make even a partial payment on the restitutory obligation. Caddell’s Chapter 11 bankruptcy lawyer testified that he had submitted a plan to the bankruptcy court, the details of which were not elucidated except that it contemplated payment to the government, which had not been accepted because the government objected to it on the basis that the disclosure statement was inadequate. There was no evidence that Caddell ever made any other attempt to secure bankruptcy court approval for any payment to the Farmer’s Home Administration, or ever sought bankruptcy court approval of any even partial restitutory payment or compliance; nor is there any evidence that any such attempts would have been futile.
 

 At the conclusion of the December 1986 hearing, the court remarked that “there’s certainly been absolutely no effort up to this point to make any restitution or to come into this Court and explain why it wasn’t being made or ask permission not to make it or anything of that nature.” The court also noted, “You’re not being completely in candor with this Court,” and plainly doubted Caddell’s credibility.
 

 The evidence was sufficient to support the district court’s implied conclusion that Caddell did not make all reasonable efforts to meet his restitution obligation. Indeed, he paid absolutely nothing in the way of restitution. In
 
 Turner,
 
 we sustained revocation of probation on the basis of the district court’s finding that the defendant had not “made any effort to make restitution.” 741 F.2d at 697. We observed there that the defendant “had full opportunity to present his explanations in defense and mitigation ..., and ... the district court rejected the latter on the basis of [defendant] Turner’s admissions and of credibility evaluations not clearly erroneous.”
 
 Id.
 
 at 698. We went on to say that it was “apparent that the court revoked Turner’s probation after rejecting his extenuating explanation.... No abuse of revocation discretion is shown by the district court’s revocation of probation because of Turner’s found failure to make a good-faith attempt to meet the restitution condition of probation_”
 
 Id.
 
 Even if Caddell could not have paid the full $165,-000 within the specified one-year period, this would not excuse his failure to pay anything or allow him to, as he in effect did, simply ignore that condition of his pro
 
 *41
 
 bation.
 
 See United States v. Boswell,
 
 605 F.2d 171, 175 n. 2 (5th Cir.1979). We also note that the information as to Caddell’s ability to make restitutory payments, and his reasons for not doing so, were peculiarly within his knowledge and accesssible to him, yet his entire presentation was exceedingly vague and lacking in both detail and objective verifiability. On the entire record, we are convinced that the district court neither violated the dictates of
 
 Bear-den
 
 nor abused its discretion in revoking Caddell’s probation.
 
 See Irvin, supra.
 

 Having rejected each of Caddell’s contentions, the order of the district court revoking his probation is
 

 AFFIRMED.
 

 [1]
 

 . We observe that
 
 Whitney
 
 was an appeal from the denial of a Rule 35 motion filed prior to fixing the amount of restitution to be made;
 
 Ferrera
 
 was an appeal from the conviction and sentence.
 

 [2]
 

 . We need not speculate on the procedural vehicle by which Caddell or the government should have drawn the bankruptcy court’s attention to this restitutory requirement, for, although both parties agree this should have been done, it was not. The apparent failure to apply to or inform the bankruptcy court is further moot since the debtor’s funds were never expended on restitution.
 

 [3]
 

 .
 
 Bearden
 
 similarly also states:
 

 ”[I]f the probationer has made all reasonable efforts to pay the fine or restitution, and yet cannot do so through no fault of his own, it is fundamentally unfair to revoke probation automatically without considering whether adequate alternative methods of punishing the defendant are available.”
 
 Id.
 
 103 S.Ct. at 2070-71 (footnote omitted).