**UNITED STATES of America**

v.

**Antoinette Blevins JOHNSON.**

**No. CR 87–AR–099–S.**

United States District Court,
N.D. Alabama, S.D.

June 14, 1991.

Frank W. Donaldson, U.S. Atty., Shirley I. McCarty, Asst. U.S. Atty., for the U.S.

Joel F. Alexander, III, Birmingham, Ala., for Antoinette Blevins Johnson.

## MEMORANDUM OPINION

ACKER, District Judge.

Antoinette Blevins Johnson appeared on June 12, 1991, to answer a petition to revoke her five-year probationary sentence. The basic facts relevant to the issue before the court are undisputed. Where they lead is the real question.

### Pertinent Facts

Johnson was indicted on April 30, 1987. The indictment contained thirty counts charging Johnson with forging endorsements on thirty different U.S. Treasury checks. If the allegations were true, each separate forgery constituted a violation of 18 U.S.C. § 495. All of the alleged offenses took place prior to the effective date of the Sentencing Guidelines. Therefore, by the terms of the criminal statute invoked by the grand jury, each count provided for a maximum sentence of ten (10) years. This meant that if Johnson had been convicted on all counts, some hardboiled federal judge who believed in the deterrent effect of imposing the maximum sentences envisioned by Congress, which, after all, is granted by the Constitution the authority to make national public policy, and not then so worried over sentencing disparity, could have sentenced her to 300 years in jail, knowing, of course, that she not only could not, but would not, serve the 300 years.

The Victim and Witness Protection Act of 1982 was also implicated in Johnson's case because Johnson allegedly passed the worthless checks to three victims. On May 19, 1987, this court entered its routine order regarding the notification of purported victims.[1] Pursuant to that order, the vic-

---

1.

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| VS. | ) | CR 87–AR–99–S |
| ANTOINETTE BLEVINS JOHNSON | ) | |

### NOTICE TO PURPORTED VICTIM

You are hereby notified, pursuant to the Victim and Witness Protection Act of 1982, that you will have no right to appeal from any order denying you restitution *unless* you file a petition for leave to intervene

tims, namely, Central Bank, County Market, and SouthTrust Bank were notified. On June 5, 1987, Central Bank petitioned for leave to intervene. Its petition was granted on June 26, 1987.

When the case was set on this court's consent docket, a formal written plea agreement was executed and filed jointly by the United States and Johnson. That agreement provided:

The United States of America and the defendant hereby acknowledge the following plea understanding in this case:

### Plea

(1) The defendant agrees to plead guilty to the indictment filed in the above numbered and captioned matter, and the United States Attorney, acting in behalf of the United States and through the undersigned assistant United States Attorney, agrees to recommend the disposition specified in paragraph (3) below.

(2) ...

(3) Pursuant to Rule 11(e)(1)(B), *F.R. Crim.P.,* the government will recommend the following sentence on defendant's plea: That upon the defendant's plea of guilty to counts twenty-nine and thirty of the indictment, the United States is prepared to recommend that the defendant be sentenced in count twenty-nine of the indictment to a term of one year and one day in the custody of the Attorney General or his representative. As to count thirty of the indictment, the United States will recommend that the defendant be placed on probation for a term of five years, such term of probation to begin upon the due and lawful release from custody of the sentence imposed on count twenty-nine of the indictment. Antoinette Blevins Johnson agrees that the amount of restitution due in this case is $23,841.00 payable in the following amounts:

Central Bank, 66 Bagby Drive, Birmingham, Alabama $18,273

County Market, 1201 Bessemer Road, Birmingham, Alabama 35228 $4,162.00

Southtrust Bank, 112 North 20th Street, Birmingham, Alabama 35290 $2,346.00

The United States recognizes that the defendant may offer evidence pursuant to Title 18, United States Code, Section 3580 as to the defendant's inability to pay the entire amount of restitution due. However, Antoinette Blevins Johnson understands that the government will seek restitution in the amount of the indictment, further the defendant acknowledges the amount of the lost [sic] sustained by the victim of this offense is $23,841.00.

(4) Unless this plea is rejected or withdrawn, the defendant thereby waives and gives up any and all motions, defenses, objections or requests which she has made or raised, or could assert hereafter, to the Court's entry of judgment against her and imposition of a sentence upon her consistent with this Agreement. Defendant further waives and gives up the right to appeal or collaterally attack the conviction based upon any of the above.

(5) The parties hereto fully and completely understand and agree that it is the Court's duty to impose sentence upon

in the above-entitled cause and are granted such leave for the purpose of protecting your right to be heard under the Victim and Witness Protection Act of 1982, 18 U.S.C. §§ 3579 *et seq.* Attached hereto is a copy of the opinion rendered by the Court of Appeals for the Eleventh Circuit on June 17, 1986, styled *United States of America v. J.C. Franklin v. Earle T. Myers,* 792 F.2d 998 (11th Cir.1986). It may provide you some assistance. You may wish to consult a private attorney on this matter because under some circumstances, which cannot always be anticipated, the United States Attorney may find himself in a conflict of interest. The consent docket in this case is scheduled on June 25, 1987, and June 26, 1987, at 9:00 A.M. If a plea of guilty is not entered, the trial is scheduled for July 6, 1987, at 9:00 A.M. Restitution issues will not be decided until sentencing if guilt is adjudicated.

DONE this 19th day of May, 1987.

/s/ William M. Acker, Jr.

WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE

the defendant and that any sentence either recommended or stipulated to herein in Paragraph "(3)" above is not binding upon the Court, and that the Court need not accept the recommendation.

(6) The defendant fully and completely understands that if the Court does not accept the government's recommendation specified in Paragraph (3) above Antoinette Blevins Johnson does not have the right to withdraw the plea, Rule 11(e)(2), *Fed.R.Crim.P.*

*Defendant's Understanding*

I have read and understand the provisions of this agreement consisting of three pages. I have discussed the case and my constitutional and other rights with my lawyer. I am satisfied with my lawyer's representation in this case. I understand that by pleading guilty, I will be waiving and giving up my right to continue to plead not guilty, to a trial by jury, to the assistance of counsel at that trial, to confront, cross-examine, or compel the attendance of witnesses, to present evidence in my behalf, my privilege against self-incrimination, and the presumption of innocence. I agree to enter my plea as indicated above on the terms and conditions set forth herein. NO OTHER PROMISES OR REPRESENTATIONS HAVE BEEN MADE TO ME BY THE PROSECUTOR, OR BY ANYONE ELSE, NOR HAVE ANY THREATS BEEN MADE OR FORCE USED TO INDUCE ME TO PLEAD GUILTY. Any recommendation or agreement by the government as to the sentence that may be imposed shall not be binding on the government in the event the defendant filed a motion to reduce or modify sentence pursuant to Rule 35, *Fed.R.Crim.P.* The United States does not waive its right to respond in any way it deems appropriate to any request filed pursuant to Rule 35, *Fed.R. Crim.P.,* on behalf of the defendant.

I further state that I have not had any drugs, medication, or alcohol within the past 48 hours except as stated hereafter.

I understand that the government may withdraw its consent to this Agreement [at] any time prior to its acceptance in writing by me as evidenced by my signature on this Plea Agreement and its delivery to the prosecuting attorney even though I may not personally have received notice of the withdrawal of consent by the government.

I have personally and voluntarily placed my initials on every page of this Agreement and have signed the signature line below to indicate I have read and approve all of the previous paragraphs of [sic]

I have read this Agreement, and understand all of the provisions of this Agreement, both individually and as a total binding agreement.

6/26/87 /s/ Antoinette Blevins Johnson

The agreement erroneously recited that the maximum custodial penalty per count was five (5) years instead of the correct ten (10) years. The addition of the three restitution amounts was poor arithmetic. However, these scriveners' errors have been waived and/or are immaterial errors in the present posture of the case.

Not only did Johnson personally execute the agreement, but her counsel also executed it after making the following representation:

I have discussed this case with my client in detail and advised her of her rights and all possible defenses. My client has conveyed to me that she understands this Agreement and consents to all its terms. I believe the plea and disposition set forth herein are appropriate under the facts of this case and are in accord with my best judgment. I concur in the entry of the plea as indicate above and on the terms and conditions set forth herein.

As promised in the agreement, the United States promptly requested of the court an order of restitution for the victims in the confessed amounts of their respective losses. The court accepted the plea agreement, including the prosecutor's recommendations for restitution as a condition of probation. Accordingly, the court adjudicated Johnson guilty under Counts 29 and

30 and granted the motion of the United States to dismiss Counts 1 through 28. On June 30, 1987, the court imposed the following sentence:

> The defendant is hereby committed to the custody of the Attorney General or his authorized representative for imprisonment for a period of One year and One day as to Count 29; imposition of sentence is suspended as to County 30 and defendant is placed on probation for Five (5) years, said probation is subject to the general terms and conditions of probation of record in this court and subject to the special condition that defendant make restitution pursuant to 18:3579 as follows: $18,273 payable to Central Bank, 66 Bagby Drive, Birmingham, AL; $4,162.00 payable to County Market, 1201 Bessemer Road, Birmingham, AL; and $2,346.00 payable to SouthTrust Bank, 55th St. and 1st Ave. N, Birmingham, AL, said restitution to be made in monthly installments of $125.00 per month to the U.S. Probation Office beginning the 10th of each month following defendant's release from custody imposed under Count 29; restitution should first be made to County Market, then SouthTrust Bank and then Central Bank; probation under Count 30 shall begin upon defendant's due and lawful release from custody imposed under County 29, or until otherwise discharged as provided by law.

Johnson was released from custody after eight months. Since then she has been supervised by the United States Probation Office. Her current probation officer, undoubtedly in total exasperation, filed the pending petition for revocation which charges Johnson with violating the special condition of probation that required a schedule of restitution totalling $24,781.00. The petition alleges that Johnson has made only token payments aggregating $150.00 since her release and has made no restitution payment whatsoever since August 6, 1990. Prior to the revocation hearing of June 12, 1991, the three victims were notified, and all three appeared at the hearing as they had for the consideration of the plea agreement on June 26, 1987.

From June 26, 1987, to this date Johnson has never collaterally attacked her plea agreement or the sentence imposed pursuant to it.

Johnson is as impecunious now as she was when she executed the plea agreement on June 26, 1987. The prospects for her paying the balance of her restitution obligations during the remainder of her probationary period, or, for that matter, during her lifetime, are minimal. Although at the revocation hearing she was afforded the opportunity to propose a solution to the court's present dilemma, that is, short of the easy solution of overlooking or forgiving her restitution obligations, Johnson had no suggestion and gave no indication of any ability or intention to pay any further sums whatsoever toward compensating her victims. In fact, it was not until after Johnson received notice of the current petition for revocation that she sought and obtained a job. Before that she was content to be on welfare.

### Conclusions of Law

This court starts with the clear-eyed recognition that the victim restitution provisions of the Victim and Witness Protection Act (18 U.S.C. §§ 3579 and 3580, as the statutes were numbered when Johnson's sentence was imposed) are constitutional and do not facially violate the Eighth Amendment's prohibition against imprisonment for debt. *United States v. Satterfield,* 743 F.2d 827 (11th Cir.1984). Before this court learned better, it had criticized the new federal victim restitution scheme in several respects, including the fact that a government prosecutor has an automatic conflict of interest when he is statutorily mandated to represent both the United States and the victim, whose respective interests are never the same. To a considerable extent the United States Attorney allayed this court's fears over whether or not the victims' rights in this case would be looked after, when on June 26, 1987, he bargained away 28 seemingly good counts in exchange for a short custodial sentence under one count and a condition of Johnson's five-year probation under another

count that she pay full restitution to her victims. This plea agreement fully complies with the following specific provision of 18 U.S.C. § 3663 (formerly § 3579), which was added by the Crime Control Act of 1990:

> The court may also order restitution in any criminal case to the extent agreed to by the parties in a plea agreement.

This court believes that this 1990 amendment only clarified the original Congressional intent of the VWPA and did not change it. Johnson's plea agreement clearly had serious implications and ominous overtones when Johnson executed it with all due solemnity and with full comprehension of its import, reinforced by the court. She gambled and lost, at least, with this court. Possibly with a higher court she will prove to have been a smart gambler.

This court is, of course, aware of another relevant provision contained in then 18 U.S.C. § 3579 (now § 3663 with amendments which were enacted after Johnson was sentenced), namely:

> If such defendant is placed on probation or paroled under this title, any restitution ordered under this section shall be a condition of such probation or parole. The court may revoke probation and the Parole Commission may revoke parole if the defendants fails to comply with such order. In determining whether to revoke probation or parole, the court or Parole Commission shall consider the defendant's employment status, earning ability, financial resources, the willfulness of the defendant's failure to pay, and any other special circumstances that may have a bearing on the defendant's ability to pay.

If this language provides easy escape from a carefully bargained-for obligation to pay restitution, it will be a court higher than this one to be the first court to say so. No court has yet said so. When on June 30, 1987, this court imposed a relatively light sentence, there was no reason whatsoever to believe that Johnson did not understand the monetary obligation she was undertaking as part of the bargain. There was no room for any misunderstanding on this central subject while the victims sat in the courtroom. If, after her release from custody, Johnson had not discontinued making even token payments to the victims of her inexcusable criminal conduct, this court's present job might be more difficult, but Johnson has seemed perfectly content not to work and not to pay. Her token payments were so minuscule as to manifest a disdain for the justice system and to indicate that Johnson never really intended to live up to her bargain unless, perhaps, she should unexpectedly inherit a million dollars.

Simply put, the question which the court must answer is: "Does the statutory language requiring that the court consider a probationer's financial resources prior to any order of revocation prevent this court from revoking probation despite the fact that Johnson's financial circumstances today are no different from her financial circumstances when she knowingly signed the plea agreement?" If the answer to this question is "Yes", the victim restitution aspect of the sentencing process becomes laughable and is no more than cosmetic legislative effort to mollify the victims of crime. A bargained-for restitution obligation becomes a ridiculous, unenforceable promise. If this court had not fully expected Johnson to pay what she had stolen from these victims, this court would have never agreed to her plea agreement. It was a *three*-way agreement. The court was a necessary party to it. To allow Johnson now to continue as a probationer without paying her victims would simply be to abrogate or sweep the plea agreement under the rug, and to overlook what, in retrospect, amounts to a fraud on the court, on Central Bank, on County Market, and on SouthTrust Bank. Not one of the victims is interested in a pound of flesh. Each would, to be sure, prefer to recover its loss. All three, however, understandably were led to believe that the Victim and Witness Protection Act was a meaningful piece of legislation, and punishment in some form is not unfair.

On June 12, 1991, the court invited Johnson to suggest a reasonable alternative to revocation, but she offered none. All she

said, through counsel, was that she is unable to pay, which is undoubtedly true. The only two available alternatives, then, become: (1) revocation, together with a forgiveness of the restitution obligation which she cannot pay, or (2) forgiveness of the restitution obligation without any penalty for her violation of the central condition of probation.

The court is aware of *Bearden v. Georgia,* 461 U.S. 660, 103 S.Ct. 2064, 76 L.Ed.2d 221 (1983), a case which this court discussed in *United States v. Welden,* 568 F.Supp. 516 (N.D.Ala.1983). *Bearden* holds "that in revocation proceedings for failure to pay a fine or restitution, a sentencing court must inquire into the reasons for the failure to pay." 103 S.Ct. at 2073. There are several reasons why *Bearden* does not stand in the way of the revocation of Johnson's probationary status in this case. First, *Bearden* involved a state court proceeding, not a federal court's relook at its own probationary sentence imposed under the Victim and Witness Protection Act. Second, in this case Johnson's restitution obligations were carefully bargained for after notice to the victims. The victims were present in the courtroom at the time of the imposition of sentence and had every right to expect compliance by Johnson in exchange for the court's acceptance of a plea agreement which gave Johnson an otherwise light sentence considering the gravity of her crimes. For aught appearing, the victims would have pursued their separate civil remedies had they not expected the court's restitution order to mean what it said. Also, Central Bank, as intervenor, was deprived of its right to test its right to appeal pursuant to the suggestion contained in *United States v. Franklin,* 792 F.2d 998 (11th Cir.1986), because it had received everything it asked for. There may be an estoppel element at play. Third, in her post-hearing brief, Johnson unsuccessfully attempts both to exploit and to distinguish *United States v. Caddell,* 830 F.2d 36 (5th Cir.1987), decided after *Bearden.* There Caddell argued "that he was unable to make restitution, and that hence revocation for his failure to do so violated his constitutional rights under *Bearden".* 830 F.2d at 39. As in Johnson's case, Caddell "had never requested any extension or modification of that condition [restitution]". 830 F.2d at 39. Further, Caddell argued that "restitution was not a part of the plea bargain". 830 F.2d at 38. Such is certainly not Johnson's situation. Johnson's restitution was the focus of her plea bargain. The Fifth Circuit upheld Caddell's revocation. Last, and perhaps the most important point learned from *Bearden,* it is that this court has found that Johnson has not made a truly bona fide effort to pay. The Supreme Court said in *Bearden:*

> If the probationer willfully refused to pay or failed to make sufficient bona fide efforts legally to acquire the resources to pay, the court may revoke probation and sentence the defendant to imprisonment within the authorized range of its sentencing authority.

103 S.Ct. at 2073.

While this court certainly has sympathy for Johnson in her penury, whether or not of her own making, the court also has sympathy for her victims, and has an interest in deterrence, and has an interest in finding a solution to this problem other than allowing Johnson simply to continue to avoid the most important condition of her probation. Johnson understood the importance of that condition to her probationary status. The most pertinent portion of the Supreme Court's opinion in *Bearden* on this point is:

> Only if alternative measures are not adequate to meet the State's interests in punishment and deterrence may the court imprison a probationer who has made sufficient bona fide efforts to pay.

103 S.Ct. at 2073.

This court can find no "alternative measures adequate to meet the government's interest in punishment and deterrence", and the court has already expressly found that Johnson's efforts to pay have not been "sufficient", much less honest and sincere.

The court is also aware of *Hughey v. United States,* —— U.S. ——, 110 S.Ct. 1979, 109 L.Ed.2d 408 (1990), in which the Supreme Court made it clear that restitu-

tion can only be ordered for victim losses resulting from the criminal acts in the counts of conviction, an interpretation of the VWPA which was unavailable to the parties on June 26, 1987. Most of the restitution ordered here represented losses sustained as the proximate consequence of acts described in the 28 counts that were dismissed. If *Hughey* had been on the books when this plea agreement was negotiated, the negotiations may very well have led to a different result, but this court cannot operate by hindsight and unilaterally amend the agreement to fit what might have been.

If this court attempted to devise an alternative to revocation under these circumstances, it would be tortured or simplistic. This court cannot think of a fair and reasonable alternative to revocation. Therefore, by separate order, Johnson's probation will be revoked, and the matter will be set for a sentencing hearing for the purpose of allowing allocution and for imposing a sentence thereafter found appropriate pursuant to Johnson's adjudication of guilt under Count 30 of the indictment, the imposition of sentence as to which has heretofore been suspended.