**UNITED STATES of America**

v.

**Kathryn Keller STOHR.**

**No. CR 91–AR–099–S.**

United States District Court,
N.D. Alabama,
S.D.

March 31, 1993.

Frank W. Donaldson, U.S. Atty., Michael W. Whisonant, Asst. U.S. Atty., for U.S.

Kathryn Keller Stohr, pro se.

James E. Harris, Birmingham, AL, for defendant.

Richard Monk, Bradley, Arant, Rose & White, Birmingham, AL, for intervenor SouthTrust Bank of Alabama, National Association.

## MEMORANDUM OPINION

ACKER, District Judge.

This case is so factually and procedurally similar to *United States v. Johnson*, 767 F.Supp. 243 (N.D.Ala.1992), dismissed on appeal in *United States v. Johnson*, 983 F.2d 216 (11th Cir.1993), that an opinion from the same court which previously lamented the victim restitution debacle in *Johnson* is virtually compelled.

As in *Johnson*, the defendant here, Kathryn Keller Stohr, embezzled from a bank which became a "victim" under the terms of the Victim and Witness Protection Act of 1982 (VWPA), 18 U.S.C. §§ 3663, 3664. As in *Johnson*, the bank, here SouthTrust Bank, N.A., was allowed actually to intervene and thus to become a party, a procedure which had been suggested by the Eleventh Circuit in *United States v. Franklin*, 792 F.2d 998 (11th Cir.1986). This court had always been under the impression that an intervenor becomes an actual party with all of the procedural rights of the other parties to the cause. As in *Johnson*, Stohr pled guilty and received a lighter sentence than she would otherwise have received had she not been ordered to make sizable restitution to the bank victim as a condition of her probation. As in *Johnson*, Stohr thereafter fell down on her obligation to pay in accordance with the payment schedule worked out with her probation officer. And finally, as in *Johnson*, the probation officer filed a motion to revoke defendant's probationary status.

When the petition for revocation of Stohr's probation first came on to be heard on December 18, 1992, *Johnson* had not been decided by the Eleventh Circuit. Because the court realized that the situation was strikingly similar to *Johnson*, the court of its own motion interrupted the hearing to await the decision in *Johnson*. After *Johnson* was decided on February 12, 1993, Stohr's revocation hearing was rescheduled for March 26, 1993, at which time SouthTrust, the victim, was represented, Stohr was represented, and the United States was represented.

Stohr readily admitted that she failed regularly to make her restitution payments in the sum of $833.33 per month, a figure arrived at by dividing the $50,000.00, which the court at initial sentencing had found Stohr to have embezzled, into sixty equal installments. Stohr, however, on March 26, 1993, succeeded in convincing the court that she made a sincere effort to make her payments. In fact, she has paid to date the sum of $7,616.65.

The United States urged the court to revoke Stohr's probation and to place her in custody as this court had done in *Johnson*. The United States was silent on what to do about the restitution question. It conspicuously did not suggest to the court that it do what it did in *Johnson*, namely, wipe out the restitution obligation as being infeasible. SouthTrust also remained silent, doubtless in recognition of the fact that *Johnson* takes away any voice it might otherwise have had as a victim-intervenor. SouthTrust just as conspicuously did not join the United States in seeking a custodial sentence for Stohr, doubtless because blood would be hard to get out of an incarcerated turnip. With no right to appeal, there was little incentive for SouthTrust to speak.

A "right" without a "remedy" can hardly be called a right. Until *Johnson*, the Clerk of this court has, upon request, been routinely furnishing certificates of judgment in favor of a victim and against the convicted defendant in the amount of the restitution order, just as in a civil case, unless otherwise ordered by the court. What the Clerk will do in the future in view of *Johnson* is anybody's guess. Perhaps the Clerk will learn some of

the lessons that the Administrative Office of the United States Courts in its recent publication, while demonstrating its frustration over the restitution issue, tries to teach to judges and probation officers.[1]

The truth of the matter is that the restitution concept as enacted by Congress in VWPA, to the slight extent it is being implemented, is nothing more than a trap for the unwary victim. As recently as February 25, 1993, this truth was emphasized to the world by some timely and in-depth investigative reporting by Richard Keil.[2]

A computer check of all federal court decisions since the enactment of the VWPA turns up not a single case in which the United States appealed from a trial court's award of restitution in a lesser amount than that claimed by the victim. In other words, SouthTrust not only cannot count on the United States but has no standing itself. This predicament is no more than this court predicted in *United States v. Welden*, 568

F.Supp. 516 (N.D.Ala.1983), where this court temporarily found the VWPA to be unconstitutional. It did not take very long for the VWPA to be found constitutional. It took a little longer for the victims to find out that an order for victim restitution is a toothless tiger.

Despite the temptation to punish Stohr for undertaking the impossible in exchange for probation, as this court perhaps did in *Johnson*, this court now does what it did not do when Stohr was initially sentenced, namely, take a realistic look at Stohr's repayment capability in light of her assets, her income and her family obligations. *See United States v. Bailey*, 975 F.2d 1028, 1034 (4th Cir.1992), in which the Fourth Circuit held that, where the defendant pled guilty to defrauding investors of more than fifteen million dollars, restitution still should not have been ordered, inasmuch as the court did not "make a factual determination that the defendant can feasibly comply with the order without undue hardship to himself or his

---

1. *Bringing Criminal Debt into Balance, Imposing Fine & Restitution Collection,* Administrative Office of U.S. Courts, 1993.

2. ASSOCIATED PRESS—WASHINGTON

More than 100 savings and loan defendants who escaped long prison terms in exchange for making penalty payments have repaid less than a half-penny per dollar on legal commitments of $133.8 million, according to an Associated Press review of federal court records.

Some defendants—and some government officials, too—readily acknowledge there is little chance the 109 convicted S & L figures who received plea bargains will ever repay the huge fines and restitutions.

"The restitution orders in these cases are thrown around like there are nickels and dimes involved," said Woodrow Brownlee, former president of Dallas-based Commodore Savings Association. He has repaid just $3,000 of the $1 million in restitution ordered in a plea bargain that spared him any prison time.

Meanwhile, a House subcommittee reported that more than $1 million in bonuses were paid last year to 136 officials of the federal agency in charge of the savings and loan cleanup.

Bonuses for 130 top officials of the Resolution Trust Corp., totaling $978,500, were approved by the agency's departing president and chief executive officer, Albert V. Casey. The agency's inspector general, John J. Adair, approved $34,700 in bonuses for six officials in his office.

The awards ranged from $1,500 to $25,000 and included 32 bonuses of $10,000 or more. The total bonus amount of $1,013,200 was more

than double the $444,500 in bonuses paid in 1991.

Though Justice Department prosecutors can try to revoke probation for defendants who fail to pay the fines owed, the department has forgone a get-tough approach and left it instead to overburdened probation and parole officers to collect the money.

George Calhoun, a senior Justice Department prosecutor, said an aggressive approach would do little because "in a good number of the cases ... they've pretty well been stripped clean by the time they get to court."

Attorney Christopher Cannon, who represented the head of a San Francisco Thrift convicted by trial of misusing funds in 1990, said the fines are "unenforceable" and "do nothing more than give the appearance of government action."

Cannon's client, Ted Musacchio, was given five years' probation and ordered to pay $9.3 million in restitution to his former thrift. Musacchio paid less than $1,000 before dying of cancer last month.

"He had zero assets, and everybody knew (that) at the time of sentencing," Cannon said.

Overall, the government has recovered just 4.5 percent of the $846.7 million in fines and restitution orders assessed in the 2,603 S & L criminal cases from October 1988 through the end of 1992, according to the General Accounting Office.

And the recovery rate for defendants involved in plea bargains is a minuscule 0.43 percent, $577,540 of $133.8 million, the AP analysis of the Justice document showed.

dependents." To like effect are *United States v. Grimes,* 967 F.2d 1468 (10th Cir. 1992), and *United States v. Owens,* 901 F.2d 1457 (8th Cir.1990).

It has now become obvious that Stohr cannot reasonably be expected to pay $833.33 per month in her current situation. Careful inquiry at the time of initial sentencing would have revealed the same thing. However, after hearing Stohr's present testimony concerning her current financial condition, the court is convinced that she can reasonably be expected to pay $300.00 per month. On March 26, 1993, she orally offered to pay $500.00 per month, but, in the judgment of this court, her said offer was made more out of fear that her probation would be revoked than from a realistic look at her balance sheet. If she were ordered to pay $500.00 per month she would probably soon be back before this court for another revocation hearing. The court believes that a monthly payment of $300.00 is doable and fair. If Stohr finds that she can pay more, she should, of course, do so.

Although this court initially found South-Trust's loss to be $50,000.00, Stohr said that she thought that she had embezzled only $30,000.00. The bank's testimony on the subject was only an estimate, as was that of Stohr. The reduction here being ordered is based not on a finding that Stohr embezzled less than $50,000.00 but on a finding that she is capable of repaying only $30,000.00 at $300.00 per month. Therefore, the restitution amount will be amended to read $30,-000.00 instead of $50,000.00. Against this $30,000.00, Stohr will, of course, be given credit for the $7,616.65 which she has already paid.

Consistent with *Johnson,* this order will not preclude SouthTrust from proceeding civilly against Stohr, as all victims are well advised to do unless they want to throw themselves wantonly on the mercy of a criminal trial judge operating under an unworkable system. Since the Administrative Office of the United States Courts on March 25, 1993 (interestingly enough, the day before Stohr's hearing), notified all district courts that the courts will run out of money for conducting civil trials after May 12, 1993,

perhaps the victims will have *no recourse but* to expect the improbable from the VWPA, that is, unless they can proceed civilly in a state court funded for jury trials.