COMMONWEALTH of Kentucky,
Appellant/Cross–Appellee,

v.

Randy MARSHALL, Appellee/Cross–Appellant.

and

Commonwealth of Kentucky, Appellant,

v.

Mark Johnson, Appellee.

Nos. 2009–SC–000229–DG, 2010–SC–000348–DG, 2009–SC–000589–DG.

Supreme Court of Kentucky.

Aug. 25, 2011.

Jack Conway, Attorney General of Kentucky, Joshua D. Farley, Assistant Attorney General, Attorney General's Office, Office of Criminal Appeals, William Robert Long, Jr., Assistant Attorney General, Criminal Appellate Division, Frankfort, KY, for Commonwealth of Kentucky.

Kathleen Kallaher Schmidt, Appeals Branch Manager, Department of Public Advocacy, Frankfort, KY, for appellee/cross-appellant Randy Marshall.

V. Gene Lewter, Department of Public Advocacy, Frankfort, KY, for appellee Mark Johnson.

Opinion of the Court by Chief Justice MINTON.

## I. INTRODUCTION.

We granted discretionary review of these two flagrant nonsupport cases to address due process requirements when a trial court considers a motion to revoke probation [1] for failure to comply with child support payment conditions. We conclude that due process requires that the trial court considering revocation for nonpay-

---

1. For the sake of brevity, we use the term *probation* to refer collectively to both probation and conditional discharge. The principles of this opinion apply with equal force to motions to revoke conditional discharge. Probation and conditional discharge are closely related concepts with their main difference being that a probationer is supervised by the probation office, whereas a conditionally discharged person is unsupervised. *See* Kentucky Revised Statutes (KRS) 533:020(1) & (3).

ment of support (1) consider whether the probationer has made sufficient bona fide efforts to pay but has been unable to pay through no fault of his own and (2) if so, consider whether alternative forms of punishment might serve the interests of punishment and deterrence. This holding is consistent with existing Kentucky and United States Supreme Court precedent concerning motions to revoke probation for failure to pay fines or restitution.

We also reconfirm the principle of due process that the trial court must make clear findings on the record specifying the evidence relied upon and the reasons for revoking probation. This requirement specifically includes findings about whether the defendant made sufficient bona fide efforts to make payments. The trial court's findings do not necessarily have to be in writing. These due process requirements apply regardless of whether child support payment conditions were imposed by the trial court or whether the defendant agreed to these conditions as part of a plea agreement. In cases in which the defendant agreed to child support payment conditions under a plea agreement, the trial court may properly focus its inquiry on post-plea financial changes without revisiting whether the defendant was able to make payments at the time the guilty plea was entered.

## II. FACTS.

Randy Marshall and Mark Johnson each entered guilty pleas to charges of flagrant nonsupport in Graves Circuit Court. Under plea agreements reached in each of their cases, they agreed to pay current child support and to make regular installment payments on the accumulated child support arrearages. Each received sen-

tences that were conditionally discharged subject to the requirement of remaining current on child support obligations and making specified monthly payments on the arrearage.

The Commonwealth later moved to revoke Marshall's and Johnson's conditional discharge based on failure to comply with child support payment conditions. Johnson twice failed to appear at hearings on the motion to revoke, causing the trial court to issue two show cause orders and eventually to issue a bench warrant for Johnson's arrest.

The trial court conducted a revocation hearing in each case. At both hearings, the Commonwealth presented the testimony of a child support caseworker that Marshall and Johnson failed to make most of the required child support payments. By the time of their hearings, Marshall and Johnson had each failed to make any payments for more than a year and were thousands of dollars behind on their support obligations.

At both hearings, defense counsel cited United States Supreme Court and Kentucky precedent concerning probation revocation for failure to pay restitution and fines to support the argument that revocation of conditional discharge for one who is simply too poor to make the payments violates due process. Marshall and Johnson both testified that they had not willfully refused to pay child support. They testified that they had been unable to make the required child support payments because of low income caused by inability to find or maintain sufficiently remunerative employment.

Johnson explained simply that he was unable to find suitable work because of his felony record.[2] Marshall offered a more

---

**2.** Johnson had a ten-year-old felony conviction before the flagrant nonsupport conviction.

detailed explanation for his failure, stating that he lost his job and his home when the apartment complex he managed was sold. Marshall testified that he found sporadic work as a handyman, but those jobs did not pay enough money for him to make the required child support payments. Marshall also introduced a letter from a company representative of the property he formerly managed corroborating his testimony that the apartment complex had been sold and suggesting the possibility of Marshall's employment as manager with the succeeding owner. According to Marshall, he bypassed other opportunities while awaiting this management position; but it never materialized. Marshall testified that he had tried to find more steady work, but he was unable to find steady work even at fast food restaurants. Furthermore, Marshall testified that he owed child support for other children in other jurisdictions and was forced to make those other child support payments first to avoid being jailed in those other jurisdictions.

Despite Marshall's and Johnson's explanations of their alleged inability to pay child support, the trial court revoked their conditional discharges.

At Johnson's hearing, the trial court stated that the fact of Johnson's nonpayment for over a year indicated a willful refusal to pay. And it noted that the Commonwealth would not be in a position to prove Johnson's ability to work and expressed a belief that the burden shifted to Johnson to show that he was not able to work.[3] In response to defense counsel's request to consider alternative forms of punishment, the trial court stated it considered punishment alternatives by allowing Johnson probation. After consideration, the trial court expressed the belief that incarceration was now the least restrictive form of punishment it could impose.

At Marshall's hearing, the trial court expressed doubt that Marshall was unable to find gainful employment, noting its impression that undocumented, non-English speaking persons were able to find jobs. And in response to defense counsel's request to consider alternative forms of punishment, the trial court stated that a year and half was a long time not to pay a nickel of child support.

Following these hearings, the trial court entered written orders revoking Marshall's and Johnson's conditional discharge.[4] These written orders did not specify what evidence the trial court relied upon but simply stated that conditional discharge was revoked for the violations claimed by the Commonwealth, namely, failure to keep child support payments current and failure to pay child support arrearages.

## A. History of Present Cases—Court of Appeals.

Both Marshall and Johnson appealed to the Court of Appeals. And the two panels hearing these appeals resolved the cases differently, although both vacated the trial court's revocation orders and remanded each case to the trial court for further proceedings.

The Court of Appeals panel considering Marshall's appeal remanded for written

3. From our review of the record, it appears that the trial court primarily focused on whether Johnson was physically unable to work rather than on whether Johnson was able to obtain gainful employment because of economic factors.

4. The trial court conditionally discharged both Marshall and Johnson, and the Commonwealth filed motions to revoke the conditional discharge. The trial court orally referred to Johnson receiving probation at his revocation hearing and styled its written revocation order as an order revoking probation.

findings of fact identifying the evidence relied on and the reasons for revocation, citing the United States Supreme Court case of *Morrissey v. Brewer*.[5] But that same panel rejected Marshall's argument that precedent required consideration of his reasons for not making the payments and consideration of alternative forms of punishment. Specifically, the *Marshall* panel concluded that although these considerations were required to revoke probation for failure to pay fines and restitution, they did not apply to failure to pay child support.

Similarly, the panel in Johnson's appeal also remanded for findings of fact identifying the evidence relied on to support revocation. But this panel did not discuss the need for such findings to be made in writing. The majority of the *Johnson* panel discussed how probation revocation for failure to pay fines and restitution required inquiry into the reasons for nonpayment and consideration of alternative forms of punishment. The majority directed the trial court on remand to afford Johnson an "opportunity to present evidence arising post-plea of his inability to make payments."[6] But the majority noted that Johnson should not have entered a guilty plea to flagrant nonsupport if he

knew he could not comply with the condition that he make the required child support payments. The *Johnson* majority stated, "the only consideration for the trial court is whether, post-plea, financial conditions beyond Johnson's control lessened or wholly negated his ability to comply with the probation condition requiring the payment of money."

The dissenting judge in *Johnson* argued that the trial court did not abuse its discretion and that "[t]here is no legal authority requiring the trial court to inquire into the reason for nonpayment or to consider alternative methods of punishment when revoking Johnson's conditional discharge for nonpayment of child support." The dissent concluded that cases dealing with probation violations for nonpayment of fines and restitution, such as *Bearden v. Georgia*[7] and *Clayborn v. Commonwealth*[8] were not applicable.

## B. Other Recent Kentucky Precedent.

### 1. The Court of Appeals Published Gamble v. Commonwealth.

A third panel of the Court of Appeals rendered a published opinion in *Gamble v. Commonwealth*,[9] which dealt with a proba-

---

5. 408 U.S. 471, 489, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972) (establishing due process requirements for parole revocation proceedings, including written findings of reason for revocation and identification of the evidence relied upon by the trial court). *See also Gagnon v. Scarpelli*, 411 U.S. 778, 782, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973) (extending due process requirements in *Morrissey* to probation revocation proceedings).

6. Johnson stated at the revocation hearing that he could not find work, but we are unaware of whether Johnson was gainfully employed at the time he entered his guilty plea to flagrant nonsupport. So it is unclear to us whether his inability to find work at the time

of the revocation hearing was a post-plea change in his circumstances. Although we do not necessarily perceive that Johnson was not allowed to present evidence of post-plea changes at his revocation hearing, the trial court may properly focus on post-plea events to the extent possible in assessing the evidence on remand.

7. 461 U.S. 660, 103 S.Ct. 2064, 76 L.Ed.2d 221 (1983).

8. 701 S.W.2d 413 (Ky.App.1985) (following *Bearden* ).

9. 293 S.W.3d 406 (Ky.App.2009).

tion revocation for failure to pay child support. Unlike the two cases before us today, the probationer refused to testify at the revocation hearing to explain his non-payment, contending he had a Fifth Amendment right not to testify.[10]

The *Gamble* panel accepted the argument that payment of child support arrearages was restitution.[11] The panel also accepted that *Bearden* and *Clayborn* generally required the trial court to inquire into the reasons for nonpayment and consider alternatives to imprisonment if the probationer had made sufficient bona fide efforts to make payments but was unable to pay through no fault of his own.[12] But the panel rejected Gamble's argument that he had a Fifth Amendment right not to testify at the probation revocation hearing concerning his reasons for nonpayment of child support.[13] Because Gamble's refusal to testify prevented the trial court from hearing Gamble's explanation for nonpayment, the Court of Appeals ultimately determined that the trial court did not abuse its discretion in revoking probation.[14] Despite Gamble's argument that due process required that the trial court make findings identifying the reason for revocation, the panel concluded that the reason for revocation (nonpayment of child support) was

so clear from the record that Gamble's due process rights were not violated.[15]

## 2. This Court Published *Commonwealth v. Alleman.*

After *Gamble*, this Court considered whether "a trial court's findings of fact and reasons for revocation entered orally on the record from the bench are sufficient to satisfy due process" in *Commonwealth v. Alleman.*[16] And despite noting that the United States Supreme Court in *Morrissey v. Brewer* expressly requires "a *written* statement by the factfinders as to the evidence relied on and the reasons for revoking parole[,]"[17] a majority of this Court concluded that videotaped oral findings could sometimes suffice. We said:

> [O]ral findings and reasons for revocation as stated by the trial court from the bench at the conclusion of a revocation hearing satisfy a probationer's due process rights, presuming the findings and reasons support the revocation, when they are preserved by a reliable means sufficiently complete to allow the parties and reviewing courts to determine the facts relied on and the reasons for revoking probation.[18]

So in *Alleman*, this Court reversed the Court of Appeals and reinstated the trial

---

10. *Id.* at 408.

11. *Id.* at 410, *citing* KRS 532.350(1)(a).

12. *Id.* at 409–10.

13. *Id.* at 411.

14. *Id.* at 412.

15. *Id.* at 413 ("Gamble contends that his due process rights were violated because the trial court's findings of fact failed to set forth its reasons for ruling that he had violated the terms of his conditional discharge. It is abundantly clear, however, that Gamble was given notice of the single reason for the revo-

cation hearing and, being present to hear the Commonwealth's evidence and the oral comments of the trial judge following the hearing, understood that his probation was revoked due to his failure to pay child support. Under these circumstances, we conclude that Gamble's due process rights were not violated.").

16. 306 S.W.3d 484, 484 (Ky.2010), *cert. denied* in *Alleman v. Kentucky*, —— U.S. ——, 131 S.Ct. 418, 178 L.Ed.2d 326 (2010).

17. *Alleman*, 306 S.W.3d at 484, *quoting Morrissey*, 408 U.S. at 489, 92 S.Ct. 2593. (Emphasis added.)

18. *Alleman*, 306 S.W.3d at 484–85.

court's probation revocation order because the trial court had orally stated on the record its reason for revocation[19] even though its written order only generally stated that the terms of probation were violated without specifying any "other facts or reasons for revoking probation."[20]

The current state of Kentucky caselaw lacks clarity or consistency to guide trial courts on due process requirements for resolving probation revocation motions based on a failure to comply with child support payment conditions. One panel of the Court of Appeals declared that a *Bearden* analysis is not required in such cases, and other panels have declared or suggested that *Bearden* analysis is required. As the panel noted in *Gamble*, some authority holds that *Bearden* analysis is not required when the defendant specifically agreed to the payment conditions as part of a plea agreement.[21] And perhaps there remains confusion over the findings that must be made by the trial court to allow meaningful appellate review of its decision. Some authority indicates that the trial court must specify the evidence it relied upon and the reasons for revocation. Other authority suggests that due process is satisfied if an acceptable basis for revocation can be gleaned from evidence in the record.

19. *Id.* at 485–86.

20. *Id.* at 486.

21. 293 S.W.3d at 411–12, *citing, e.g., Dickey v. State*, 257 Ga.App. 190, 570 S.E.2d 634 (2002). Although the Court of Appeals discusses this line of cases in more depth than we do here, it is apparent that the main premise of these cases is that the probationer should not be allowed to have the benefit of

## III. ANALYSIS.

### A. *Bearden* Due Process Requirements Apply to Cases When Probation Revocation is Sought for Failure to Comply with Child Support Payment Conditions Because Payment of Past Due Child Support is Restitution.

■ The opinions of the Court of Appeals in the cases before us reached divergent holdings on what due process requires in these cases. And this Court has not previously extended due process requirements for resolving motions to revoke probation for failure to pay fines and restitution to this context. Namely, the trial court must consider (1) whether the probationer made sufficient bona fide attempts to make payments but been unable to do so through no fault of his own and, if so, (2) whether alternatives to imprisonment might suffice to serve interests in punishment and deterrence.[22]

As the Court of Appeals aptly stated in *Gamble*, payment of past due child support is restitution:

[*Restitution*] is defined in KRS 532.350(1)(a) as "any form of compensation paid by a convicted person to a victim for counseling, medical expenses, lost wages due to injury, or property damage and other expenses suffered by a victim because of a criminal act." When a person commits the offense of

probation if he fails to keep up his end of the bargain to make the payments he specifically agreed to make under a plea agreement.

22. *See Clayborn*, 701 S.W.2d at 415, *quoting Bearden*, 461 U.S. at 672–73, 103 S.Ct. 2064 (requiring *Bearden* analysis to resolve motions to revoke probation for failure to pay fines and restitution).

flagrant nonsupport, he or she causes the party entitled to receive child support to incur expenses because of that criminal act. We believe that money owed for past due child support constitutes [*restitution*] within the meaning of the statute. As such, before probation or conditional discharge may be revoked based on a failure to pay child support, the requirements of the *Bearden* case must be met.[23]

So we agree with the Court of Appeals in *Gamble* that the *Bearden* case requirements apply to motions for probation revocation for failure to comply with conditions requiring payment of child support.

## B. *Bearden* Requirements Apply Even When Defendant Agrees to Payment of Child Support as Probation Condition Under Terms of Plea Agreement.

The Commonwealth acknowledges that *Gamble* held payment of past due child support to be restitution and that *Bearden* requirements should generally apply to motions for revocation for failure to pay child support under *Gamble*. But the Commonwealth asserts that the Court of Appeals held in *Gamble* that *Bearden* does not apply where the probationer has specifically agreed to make payments as part of a plea agreement. We disagree. The Court of Appeals did not decide that precise issue in *Gamble*. The court noted that some jurisdictions found that *Bearden* did not apply in such a situation but declined to resolve the case on this basis because the parties had not argued this issue.[24] Ultimately, the court held that even assuming that *Bearden* requirements applied, the trial court did not abuse its discretion in revoking probation because of the probationer's refusal to testify about the reasons for his nonpayment, thus, preventing the trial court's inquiry into this matter.[25]

We agree with the approach of the Court of Appeals in *Johnson* directing the trial court to focus on post-plea financial conditions because a defendant pleading guilty to flagrant nonsupport admits not making payments despite ability to do so,[26] but we do not agree with authority holding that a defendant's agreement to make payments under a plea agreement trumps the right he would otherwise have under *Bearden* for consideration of his reasons for nonpayment and possible consideration of alternative forms of punishment.[27] We

---

23. 293 S.W.3d at 410. (Footnotes omitted.)

24. *Id.* at 411–12.

25. *Id.* at 412.

26. *See* KRS 530.050(2) (flagrant nonsupport requires that one "persistently fails to provide support which he can reasonably provide"). So a guilty plea to flagrant nonsupport is an admission to withholding payment of child support despite being reasonably able to pay it.

27. *See, e.g., Dickey v. State*. Although Marshall cites cases from other jurisdictions in which *Bearden* is applied to revocation hearings for failure to comply with support payment conditions even though the defendant entered a guilty plea to nonsupport, these cases do not indicate whether the defendant specifically agreed to child support payment conditions in a plea agreement when entering his guilty plea. *See, e.g., State v. Coleman*, No. 97APA06–832, 1998 WL 54365 at *1 (Ohio App. Feb. 5, 1998) (noting defendant pled guilty to failure to support children, and his sentence was probation with conditions including paying fines and making "restitution" for past due child support without addressing whether defendant had specifically agreed to these conditions when pleading guilty); *State v. Bowsher*, No. 14–07–32, 2009 WL 4756433 at *1 (Ohio App. Dec. 14, 2009) (noting defendant pled guilty to nonsupport and was placed on community control and violated conditions of community control by not making monthly child support payments without explicitly indicating whether defen-

recognize the legitimate interest of the Commonwealth that plea agreements accepted by trial courts should be enforced and that defendants should not escape responsibility for failing to comply with conditions to which they have agreed. Nonetheless, *Bearden* recognizes constitutional concerns with revoking probation for nonpayment based on poverty alone. And these constitutional concerns do not disappear simply because a defendant originally agreed to make payments in a plea bargain as opposed to the trial court imposing payment conditions in a probation order on its own initiative.

Kentucky courts have long recognized such concerns. Even though the Court of Appeals indicated that consideration of the probationers' indigence was not required when revoking probation for failure to comply with payment conditions that the defendant specifically agreed to under a plea agreement in the *pre-Bearden* case of *Polk v. Commonwealth*,[28] we believe that trial courts of this Commonwealth customarily inquire into a probationer's reasons for not complying with payment conditions and consider alternative measures when poverty alone might be the reason for noncompliance with payment conditions. Experienced trial judges seek this information even in the absence of controlling authority specifically demanding that they do so. This is demonstrated by the actions

of the trial court in *Polk*, which presented with a motion to revoke probation for the defendant's failure to comply with the agreed-upon probation condition that he make restitution payments, permitted inquiry into the defendant's financial condition[29] and discussed options for dealing with the violation before the defendant indicated he would rather go to prison than deal with other options.[30] About two years after *Polk*, the United States Supreme Court articulated in *Bearden* why such inquiries were required under due process and did so in such a way that make these requirements applicable even when a defendant committed to make payments under a plea agreement.

We note the defendant in *Bearden* pled guilty to burglary and theft by knowingly receiving stolen property. The trial court did not enter judgment of guilt but deferred further proceedings and placed the defendant on probation with conditions of probation, including payment of a fine and restitution.[31] It appears that the defendant in *Bearden* did not agree to pay fines and restitution under a formal plea agreement, so it has been widely interpreted that these conditions were imposed on the defendant in *Bearden* without his consent. But we previously noted that sometimes informal plea agreements may be reached without being memorialized in writing,[32] so

dant agreed to make the payments pursuant to a plea agreement); *U.S. v. Marriner*, 79 Fed.Appx. 102, 103 (6th Cir.2003) (noting defendant pled guilty to failing to support child in another state and received probation, with conditions including making "full restitution of his child support obligation arrearage" without explicitly indicating whether he agreed to such conditions as part of a plea agreement).

**28.** 622 S.W.2d 223, 225 (Ky.App.1981).

**29.** *See id.* at 224 (noting that following presentation of Commonwealth's evidence of non-

payment, "[q]uestions arose as to the appellant's financial difficulties, among those were his supporting a wife and four children, and his work being irregular.").

**30.** *Id.*

**31.** 461 U.S. at 662, 103 S.Ct. 2064.

**32.** *Fraser v. Commonwealth*, 59 S.W.3d 448, 457 (Ky.2001) ("the absence from the record of a written plea agreement does not 'conclusively resolve' that a plea agreement was not, in fact, reached. Oral plea agreements are not uncommon.").

it may not always be clear whether a defendant has agreed to payment conditions imposed by a trial court when a defendant enters a guilty plea without a formal, written plea agreement appearing in the record.

Despite the fact that the defendant in *Bearden* did not specifically agree to make payments a condition of his probation under a formal plea agreement, we believe Marshall's reply brief makes a good argument that *Bearden* is applicable to the cases at hand because "[t]he focus of the Court's analysis was not whether the defendant bargained for the restitution and fine...." On the contrary, the focus of the *Bearden* decision was "whether due process was violated by imposing a prison sentence for a defendant for whom the court had previously decided a loss of freedom was inappropriate but only changed its mind when the defendant became unable to pay despite good faith efforts to do so." And, as Marshall argues, the *Bearden* court distinguished between probationers who willfully refused to make the payments required as condition of their probation and probationers who made good faith efforts to pay but were unable to comply with such conditions because of circumstances beyond their control.

But *Bearden* does not distinguish between those who agree to make payments under a plea agreement and those who are ordered by the trial court to make such payments as a condition of probation or conditional discharge. As Marshall points out, regardless of whether the defendant and the Commonwealth reach a formal plea agreement, ultimately, the trial court (not the parties) decides whether to grant probation or conditional discharge and whether to impose payment conditions. So the trial court imposes any payment conditions whether by accepting the parties' plea agreement or by acting on its own initiative. And even when conditions are imposed by the trial court rather than agreed to by the parties, a defendant must agree to the conditions of probation and is free to reject probation.[33]

■■■ As Justice O'Connor wrote in *Bearden*, the initial decision to place a defendant on probation "reflects a determination by the sentencing court that the State's penological interests do not require imprisonment."[34] Under Kentucky law, this same determination is made when placing a defendant on probation even when sentencing the defendant to probation according to the terms of the plea agreement. A trial court is not compelled to accept a plea agreement,[35] and a trial court may properly reject a plea agreement calling for probation if it finds that probation would not serve the Commonwealth's penological interests.[36]

Often Kentucky trial courts grant probation or conditional discharge to those entering guilty pleas to flagrant nonsupport under plea agreements, perhaps recognizing that many defendants whose criminal offense is flagrant nonsupport do not re-

33. *See Polk,* 622 S.W.2d at 224.

34. *Bearden,* 461 U.S. at 670, 103 S.Ct. 2064.

35. *See generally* Kentucky Rules of Criminal Procedure (RCr) 8.10; *Kennedy v. Commonwealth,* 962 S.W.2d 880 (Ky.App.1997).

36. See KRS 533.010(2) (requiring a sentencing court to consider probation in noncapital cases and must grant probation unless it concludes that imprisonment is necessary to pro-

tect the public because: "(a) There is substantial risk that during a period of probation or conditional discharge the defendant will commit another crime; (b) The defendant is in need of correctional treatment that can be provided most effectively by his commitment to a correctional institution; or (c) A disposition under this chapter will unduly depreciate the seriousness of the defendant's crime.").

quire imprisonment to protect the public and could best correct their prior failure to support dependents by remaining out of prison to work and contribute income to their support obligations. But a trial court can properly deny probation and initially sentence a defendant to prison for flagrant nonsupport [37] when it finds that probation is inappropriate—for example, in the case of a defendant with an extensive criminal record.[38] In short, even where the trial court has granted probation to a defendant pleading guilty to flagrant nonsupport under a plea agreement in which the defendant agrees to make child support payments as a condition of probation, the trial court has initially determined that imprisonment is not necessary to serve the Commonwealth's penological interests.

Because the trial court initially rejected a sentence of imprisonment, *Bearden* indicates that the trial court must determine in revocation proceedings whether a failure to comply with payment conditions means that imprisonment now becomes necessary to fulfill penological interests. *Bearden* holds that where the probationer has not made reasonable efforts to comply with payment conditions but has willfully refused to pay, the determination of whether imprisonment is required needs

re-evaluation.[39] But where the probationer made reasonable efforts to pay and has complied with other conditions of probation but has been unable to comply with payment conditions through no fault of his own, it would be "fundamentally unfair" and a 14th Amendment due process violation [40] to revoke automatically without considering whether alternative punishments could adequately serve the state's penological interests.[41] Because imprisoning one who made sufficient bona fide attempts to pay but is simply too poor to make the required payments would not serve the interests of restitution or rehabilitation, the trial court need only assess whether imprisonment is necessary for the purposes of punishment and deterrence.[42] So the court considering a motion for revocation for failure to comply with payment conditions must determine whether the defendant has made sufficient bona fide efforts to make payments and, if so, must consider whether alternative punishments might satisfy the state's penological interests or whether imprisonment is still necessary for the purposes of punishment or deterrence.[43]

*Bearden* recognized that once a defendant is probated, he then acquires an interest in remaining on probation rather

---

37. See KRS 530.050(6) (stating that flagrant nonsupport is a Class D felony); KRS 532.060(2)(d) (Class D felonies subject to maximum terms of imprisonment of one to five years).

38. See *Jones v. Commonwealth*, 260 S.W.3d 355, 357–58 (Ky.App.2008) (noting that trial court did not accept recommendation for probation in plea agreement for flagrant nonsupport because of defendant's "lengthy record" of prior criminal convictions).

39. *Bearden*, 461 U.S. at 670, 103 S.Ct. 2064.

40. Because we find *Bearden* applicable to the type of cases presented here and *Bearden* is based upon due process under the 14th

Amendment to the United States Constitution, we need not reach any arguments that the appellees here are entitled to relief under Ky. Const. § 18 (Imprisonment for debt restricted) ("The person of a debtor, where there is not strong presumption of fraud, shall not be continued in prison after delivering up his estate for the benefit of his creditors in such manner as shall be prescribed by law.").

41. *Id.* at 668–69, 103 S.Ct. 2064.

42. *Id.* at 670–71, 103 S.Ct. 2064.

43. *Id.* at 672, 103 S.Ct. 2064.

than going to prison.[44] So the government must afford the probationer due process before revoking probation and sending him to prison. Because the Supreme Court did not explicitly hold that the due process requirements set forth in *Bearden* depend on the trial court imposing payment conditions on its own initiative rather than the defendant agreeing to such payment conditions, the defendant's agreement to payment conditions under a plea agreement does not remove the need for *Bearden* analysis before revocation.

## C. Trial Court Must Make Specific Findings on the Record of *Bearden* Considerations.

■ Because *Bearden* requirements apply despite the defendants' agreeing to make child support payments as part of the plea bargaining process, the Court of Appeals reached the correct result in both cases by vacating the trial court's orders revoking probation for Marshall and Johnson. We note that the trial court did afford both defendants an opportunity to present evidence to explain their failure to make the required payments. But the trial court failed to make adequate findings on the record: (1) whether each defendant had made sufficient bona fide efforts to make payments but was unable to do so from no fault of his own and, if so, (2) whether alternatives to incarceration would suffice to accomplish the Commonwealth's punishment and deterrence objectives.

Similarly to the trial court in *Bearden*, which commented on the availability of odd jobs but made no finding about whether the defendant made sufficient bona fide efforts to comply with his payment condi-

tions,[45] the trial court stated that it did not believe Marshall could not find a job (despite Marshall testifying to working odd jobs) because undocumented noncitizens could get jobs. And it failed to find whether Marshall made sufficient bona fide efforts to comply with child support payment conditions.

Likewise, it did not explicitly find whether Johnson made sufficient bona fide attempts to make payments, despite stating that his failure to make payments for over a year indicated a willful refusal to pay. This statement gives the appearance that the trial court based any finding of a willful refusal to pay based solely on the lack of payments for over a year without explicitly assessing whether the defendant had made sufficient bona fide efforts to pay but was unable to do so due to no fault of his own.

■ On remand, the trial court is directed to find whether each defendant made sufficient bona fide attempts to make payments but was unable to make the required payments through no fault of his own and, if so, whether alternative punishment might accomplish the Commonwealth's punishment and deterrence objectives. The trial court must specifically identify the evidence it relies upon in making these determinations on the record, as well as the specific reason(s) for revoking probation on the record. Although we indicated in *Alleman* that such findings do not necessarily have to be in writing, we hold that the trial court must make such findings specifically on the record. It is not enough that an appellate court might find some evidence in the record to support *a* reason for revoking probation by reviewing the whole record. Stating "gen-

---

**44.** *Id.* at 671, 103 S.Ct. 2064 (noting "the significant interest of the individual in remaining on probation" recognized in *Gagnon* and *Morrissey*).

**45.** *Id.* at 673, 103 S.Ct. 2064.

eral conclusory reasons" for revoking probation is not enough, as we recognized in *Alleman.*[46]

### D. Trial Court May Properly Focus Inquiry on Post–Plea Changes Where Defendant has Pled Guilty to Flagrant NonSupport and Agreed to Make Child Support Payments as Probation Condition Under Plea Agreement.

■ It is entirely appropriate for the trial court to consider a defendant's agreement to payment conditions under the plea agreement and a defendant's representation that he could make such payments when entering his guilty plea and to focus on post-plea financial changes to the extent possible.[47] We express no opinion on the ultimate merits of Marshall's and Johnson's revocation motions on remand, including whether imprisonment might still be necessary to accomplish legitimate penological interests of punishment and deterrence even if the trial court decides that Marshall or Johnson did make sufficient bona fide efforts to make the required payments but was unable to due to no fault of his own.

■ As with all probation revocation hearings, the Commonwealth has the burden of proving a probation violation by a preponderance of the evidence.[48] But if the Commonwealth has shown that payment conditions were violated by the defendant's failure to make the required payments, the probationer bears the burden of persuading the trial court that he made bona fide efforts to comply with payment conditions but was unable to do so through no fault of his own.[49] The trial court must afford the probationer an opportunity to present evidence of reasons for nonpayment but may focus consideration on post-plea changes if defendant entered a guilty plea to flagrant nonsupport, particularly where he agreed to make payments under a plea agreement. The trial court must specifically find whether the probationer made sufficient bona fide efforts to comply with payment obligations. If so, the trial court must then consider whether alternative measures might accomplish interests in punishment and deterrence or if imprisonment is necessary to accomplish these objectives.

### IV. CONCLUSION.

For the foregoing reasons, we affirm the decisions of the Court of Appeals vacating the trial court's judgments and remanding for further proceedings. Upon remand,

---

46. 306 S.W.3d at 487 (concluding that clear oral findings properly preserved in the record that identify the reason(s) for revocation and evidence relied upon by the trial court satisfy due process but noting that "we might rule differently were we faced with general conclusory reasons by the [trial] court for revoking probation, or with a record from which we were unable to determine the basis of the [trial] court's decision to revoke probation.") (Citations and internal quotation marks omitted.).

47. Obviously, the defendants' guilty pleas to flagrant nonsupport implicitly represent their past and current ability to make payments (as of the time of the guilty plea proceedings); but the defendants would not necessarily be able to predict their future ability to make payments in light of unexpected changes in the general economy or their employers' business (such as employers going out of business, companies being sold, etc.). However, we recognize that sometimes, as a practical matter, it may be difficult to pinpoint exactly when such changes occurred.

48. *Gamble,* 293 S.W.3d at 411.

49. *See id.* ("[W]e have not been cited to any authority, nor do we know of any, that requires the Commonwealth to bear the burden of proving the reasons Gamble failed to make such payments. This is a matter that would be within the knowledge of Gamble himself.")

further proceedings must be conducted in conformity with this opinion.

All sitting. ABRAMSON, NOBLE, and SCHRODER, JJ., concur.
CUNNINGHAM, J., dissents by separate opinion in which SCOTT and VENTERS, JJ., join.

CUNNINGHAM, J., dissenting:

Even Yoda, the diminutive Star Wars guru, recognized that sometimes in life we have to fish or cut bait. "Do or do not. There is no try."

It is an admonition which fits the deadbeat parent when all our solicitous pleadings and beseeching have led nowhere. The courtrooms of Kentucky are visited daily by custodial parents of children—usually mothers—seeking child support from noncustodial parents—usually fathers. Our County Attorneys collected a whopping 416 million dollars in 2009 and over 400 million dollars in 2010 in past due child support. This is the amount which has been collected. Sadly, it falls way short of that which is owed. According to the U.S. Department of Health and Human Services, in 2010 there was still approximately 1.3 billion dollars in owed, but unpaid, child support obligations in Kentucky. *The Office of Child Support Enforcement, 2010 Preliminary Report— State Box Scores,* 9–10, http:// www.acf. hhs.gov/programs/cse/pubs/2011/reports/ preliminary_report_fy2010/state.html.

For every judge—district, family, circuit—it is drudge work. Typically, on the civil side, destitute mothers stand forlornly before them, sometimes working at two jobs, begging for help in feeding the mouths of their children. Standing on the other side of the courtroom are fathers, sometimes thousands of dollars behind in their obligations. This creates not only a terrible hardship on young mothers, but strains our already strapped welfare system. All of these proceedings take place under the constraints and dictates of *Lewis v. Lewis,* 875 S.W.2d 862 (Ky.1993), which affords the delinquent custodian basic rights, including the right to counsel before incarceration can be imposed. Sad and weary stories come to the judge from both sides of the courtroom as mothers lament want and fathers lament lack Of income. Need is always established. And there are cases peppering our dockets where fathers are acting in good faith, actually down on their luck, trying desperately to work, scraping out a mere existence for their own survival, and deprived of any means whatsoever of providing for their children. These seldom make it to the criminal stage. The trial judge must wade through this maze of entangling stories of woe and decide who is telling the truth and who is not, who is malingering and who is not, who is embellishing his or her condition and who is not and finally come to some solution. But usually there is no solution. When this civil action has run aground and options are exhausted, a weary process moves to the grand jury. There is born the felony charge of flagrant nonsupport.

What the Court does today is blend the civil process into the criminal and, in effect, mandate that the Commonwealth prove once again the ability to pay—even after a defendant has pled guilty to the felony of persistently failing "to provide support *which he can reasonably provide* and which he knows he has a duty to provide by virtue of a court or administrative order to a minor...." KRS 530.050(2). (Emphasis added.)

The Court today seems to unrealistically think of these defendants in flagrant nonsupport cases as being dressed in the rags of a Dickens' chimney sweep struck down by the oppressive yoke of penury beyond

his or her control. For almost everyone who reaches this stage of the criminal proceedings, it is not victimized poverty. It is irresponsibility—criminal irresponsibility. The bond information on Marshall lists nine dependents. The record is unclear as to how many of those are children brought into this world without ample thought as to their care and support. The trial court was a paragon of patience with Johnson. He failed to appear in court on the motion to revoke and then failed to appear on two subsequent show cause orders before a bench warrant finally had to be taken.

The criminal defendant for flagrant nonsupport is girded with all of the constitutional protections as one who is charged with murder. The right to vigorous counsel, opportunity to a jury trial, unanimous verdict, and all of the due process habiliments are there for the asking.

Now facing prison, the defendant always seeks one more chance. Probation is sought and—to the glee of the delinquent parent—it is granted. Conditions are imposed. Go pay your child support. Unlike the civil directive, the command is not to go and *try* to pay your child support—but pay. "Do or do not. There is no try."

That's what criminal probation is all about. A person has been convicted. The presumption of innocence is gone. And while he or she is entitled to certain due process rights at revocation hearings, the burden of proof is only preponderance of the evidence that the condition was violated. That's all. The inability defense was waived with the guilty plea. Otherwise, we are morphing the criminal action—which is penal—back into a civil action—all to the weary chagrin of desperate mothers. The prosecutor's recommendation in these cases always includes the condition that the defendant will pay future child sup-

port. It is not a condition that he or she will *try* to pay future child support.

The following sentence is the gist of this dissent. Under our decision here today, the Commonwealth loses a very vital part of its bargain—the part which relieves it from continuing to carry the burden of proving the ability to pay.

It's not fair. It's not fair to the Commonwealth. It's not fair to the parent waiting for the check. Most importantly, it's not fair to the innocent babe who is totally unable to support itself.

I disagree strongly with the majority's position that a plea agreement does not "eviscerate the right he would otherwise have under *Bearden.*" This is contrary to the rule in many states. North Dakota was the pioneer in this view and it is one worth emulating. *Nordahl,* its seminal case, says *Bearden* only applies in cases where restitution is imposed by a court order and, therefore, does not apply where it is agreed to in a plea agreement.

To allow an accused to offer an agreement with a sentence limitation based on restitution being made and then allow him to take advantage of this limitation when restitution is not made is a windfall this court will not permit. Although the Supreme Court has disallowed confinement or an increase in confinement when restitution was not made, those cases are distinguishable from the case before us. Those cases dealt with restitution and increased confinement as part of the adjudged sentence, something over which the defendants had no control.

*State v. Nordahl,* 2004 ND 106, 680 N.W.2d 247, 252 (quoting *United States v. Foust,* 25 M.J. 647, 649 (A.C.M.R.1987)).

Along with North Dakota, several other states and jurisdictions follow this, plea agreement view. *See Polk v. Common-*

*wealth* (pre-*Bearden* ), 622 S.W.2d 223 (Ky.App.1981); *Patton v. State,* 458 N.E.2d 657 (Ind.Ct.App.1984); *Commonwealth v. Payne,* 33 Mass.App.Ct. 553, 602 N.E.2d 594 (1992); *Dickey v. State,* 257 Ga.App. 190, 570 S.E.2d 634 (2002); *Wright v. State,* 610 So.2d 1187 (Ala.Crim. App.1992); *U.S. v. Johnson,* 767 F.Supp. 243 (N.D.Ala.1991); and *U.S. v. Mitchell,* 51 M.J. 490 (C.A.A.F.1999).

It puzzles me that the Court here today extends more judicial grace to those who shirk their responsibilities for their own children than those who are mercilessly enslaved to addiction. When a criminal defendant is probated on the condition that he will not imbibe in alcohol or use illegal drugs, the evidence is typically a dirty drug screen. The trial court is not required to make any finding other than the defendant violated the terms of probation. In fact, there is no other condition of probation where the judge has to make a finding behind the infraction. With our decision here today, we make it more difficult for the state to enforce child support laws. In doing so, we now add another dimension to flagrant nonsupport probation at the expense of needy children. Our system of criminal prosecution for flagrant nonsupport will not break down because of our decision here today. But we have added one more piece of baggage onto the trial bench. And we never take anything off.

The U.S. Supreme Court has had a chance to expand *Bearden,* but has not done so. In fact, our decision today goes beyond the dictates of our nation's highest court. In *Black v. Romano,* 471 U.S. 606, 611, 105 S.Ct. 2254, 85 L.Ed.2d 636 (1985), it held that the trial court does not have to state explicitly why it has rejected alternatives to incarceration. Our majority states, however, that the trial court must find "whether alternative punishment might accomplish the Commonwealth's punishment and deterrence objectives." Oddly enough, this is not even required when the delinquent is incarcerated on the civil side for contempt.

The crime of flagrant nonsupport is unique in that either a jury or a court has—in making a finding of guilt—determined that the defendant failed to make child support payments in violation of a court order "which he could reasonably provide." KRS 532.050(2). It is not like the burglary crime in *Bearden.* No finding is made at the time of the judgment of guilty and imposition of probation for a burglary crime whether the defendant has the ability to pay the restitution. In the flagrant nonsupport, that is an element of the crime. The court has already made the finding that the defendant had the means to pay the money owed. It is ludicrous to require the Commonwealth to prove by a preponderance of the evidence at a revocation hearing what it has already proven beyond a reasonable doubt. In requiring a new finding on that indebtedness, we are in essence setting aside one of the elements of the crime for which the defendant has already pled guilty.

With all due respect, I believe the majority misreads *Gamble v. Commonwealth* by relying on it for the proposition that child support arrearage is restitution. When one reads this Court of Appeals' holding, it is evident that issue was sidestepped. Said the *Gamble* court: "Omitting the plea agreement issue and *assuming* the trial court was required to follow *Bearden* principles and inquire into the reasons for Gamble's failure to pay, [the court] was effectively precluded from doing so in this case because Gamble refused to testify." 293 S.W.3d 406, 412 (Ky.App. 2009) (emphasis added). That is the narrow holding of *Gamble.* In fact, that opinion admits that "[a]t this time, however,

there is no published final decision from the appellate courts of this state that determines whether the *Bearden* principles apply to probation revocation based on failure to pay child support." *Id.* at 410.

In any event, I would submit that the facts here are different from those in *Gamble.* In both *Marshall* and *Johnson,* the trial court revoked probation for failure to "keep current" in child support. It would appear from reading *Gamble* that his revocation was primarily for arrearage established at the time of the plea. (Not to belabor a point made earlier as to the irresponsible nature of the typical nonsupport felon, but the reckless Gamble—over $13,000 behind in his child support—was finally arrested skulking in an abandoned trailer.)

Surely, the requirement to make future child support is not restitution and does not fall within the *Bearden* purview. In fact, failure to pay future child support is the same as failure to comply with any other condition of probation.

However, our Court today tries to shoehorn the dictates of *Bearden* into covering future failures to pay child support as restitution. Failure to pay future child support as a condition for probation is definitely not the same as failure to pay restitution. First of all, it is not fixed at the time of the judgment of conviction. Secondly, it does not even fall within our statutory definition of restitution. KRS 532.350(1)(a) defines restitution as "any form of compensation paid by a convicted person to a victim for ... expenses suffered by a victim *because of a criminal act.*" (Emphasis added.) The "criminal act" for which Marshall and Johnson are convicted is past due child support, not future support not paid. The future delinquencies have not yet been adjudicated crimes.

Therefore, for the reasons stated above, I would affirm. I thereby respectfully dissent.

SCOTT and VENTERS, JJ., join.