RENDERED:  FEBRUARY 17, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-0280-MR

MELISSA VANNATTER                                       APPELLANT

v.             APPEAL FROM HARDIN CIRCUIT COURT
HONORABLE KELLY MARK EASTON, JUDGE
ACTION NO. 19-CR-00590

COMMONWEALTH OF KENTUCKY                      APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  JONES, KAREM, AND LAMBERT, JUDGES.

JONES, JUDGE:  Melissa Vannatter appeals an order of the Hardin Circuit Court removing her from pretrial diversion, denying her probation, and sentencing her to a term of imprisonment consistent with her prior guilty plea to flagrant nonsupport. Upon review, we affirm.

# I. BACKGROUND

In 2017, Vannatter lost custody of her children[1] and was ordered to pay child support. As of May 31, 2019, she had an arrearage of $7,520. On June 7, 2019, due to her arrearage, Vannatter was indicted and entered a plea of guilty in Hardin Circuit Court to the offense of flagrant nonsupport. Her resulting sentence of five years' imprisonment was diverted for a period of five years or until the arrearage was paid in full, whichever occurred last. Afterward, Vannatter made a few more monthly payments, which ceased as of October 2019. This prompted a January 15, 2020 motion from the Commonwealth to void her diversion; by that time, due to Vannatter's continued nonpayment of child support, her arrearage had increased to $9,246.62. The trial court scheduled a hearing on the Commonwealth's motion for March 3, 2020. However, Vannatter did not appear at the hearing, so the trial court issued a bench warrant. Elizabethtown Police later arrested Vannatter on March 26, 2020, and later that day Vannatter tested positive for marijuana at the Hardin County Detention Center.

On April 7, 2020, the trial court conducted a revocation hearing. There, Vannatter admitted failing to pay child support since October 2019, and she did not contest the positive result of her drug test. The trial court also determined

---

[1] As of January 18, 2022, Vannatter's five children ranged in age from 14 years old to 22 years old. After Vannatter lost custody in 2017, the children's father was granted custody. Subsequently, her youngest children were placed in foster care when the father lost custody due to allegations of abuse and neglect.

that Vannatter's nonpayment of child support and drug use constituted violations of her pretrial diversion. However, despite expressing frustration that Vannatter had stopped paying child support but could apparently afford marijuana, the trial court nevertheless denied the Commonwealth's motion to void her diversion. Instead, it directed Vannatter to be assessed for drug treatment by a social service clinician, and to follow all treatment recommendations. It amended the terms of her diversion to require supervision and drug testing from Probation and Parole, ordering Vannatter to be tested for marijuana twice weekly. Further, it released Vannatter from custody, but directed Vannatter to resume making monthly child support payment starting thirty days after her release. The trial court entered written orders memorializing these findings and directives on April 10 and April 15, 2020.

On October 18, 2021, Probation and Parole Officer Stephanie Beckwith filed a violation of supervision report. There, Beckwith indicated that on several occasions in 2021, she had reminded Vannatter to pay her court-ordered child support, but that Vannatter had failed to make any child support payments since July 2020. Beckwith also represented that Vannatter's whereabouts were unknown, and that Vannatter had failed to report as required on August 11, 2021; September 20, 2021; September 22, 2021; October 11, 2021; and October 14,

2021.[2] Due to these asserted violations (*i.e.*, nonpayment of child support and absconding), Beckwith recommended against graduated sanctions, and favored revoking Vannatter's pretrial diversion.

On October 18, 2021, the trial court issued another bench warrant for Vannatter's arrest. On December 19, 2021, Vannatter was again arrested. And on January 4, 2022, the Commonwealth filed another motion to void Vannatter's pretrial diversion. In support of its motion, the Commonwealth relied upon the substance of Beckwith's report; it also relied upon an affidavit of child support case worker Whitney Griffith, which stated that as of December 31, 2021, Vannatter's child support arrearage stood at $11,543.33.

On January 18, 2022, the trial court conducted another revocation hearing. After considering the evidence presented, it determined Vannatter had violated the terms and conditions of her diversion as alleged, and it voided Vannatter's diversion after determining lesser sanctions were inappropriate. During its subsequent hearing of February 9, 2022, the trial court then denied Vannatter's request for probation after again determining lesser sanctions were inappropriate, and instead sentenced her to a term of five years' imprisonment

---

[2] At the January 18, 2022 revocation hearing, Beckwith testified she was able to reach Vannatter by telephone on August 11, 2021 and September 22, 2021, but that this did not satisfy Vannatter's obligation to report because Vannatter did not come to the office on those dates.

-4-

consistent with her prior guilty plea. Vannatter now appeals. Other relevant facts will be discussed in the context of our analysis.

## II. ANALYSIS

A trial court's decision to void pretrial diversion uses the same criteria as a decision to revoke probation. *Richardson v. Commonwealth*, 494 S.W.3d 495, 498 (Ky. App. 2015); Kentucky Revised Statute (KRS) 533.256(2). "A decision to revoke probation is reviewed for an abuse of discretion." *Commonwealth v. Andrews*, 448 S.W.3d 773, 780 (Ky. 2014) (citing *Commonwealth v. Lopez*, 292 S.W.3d 878 (Ky. 2009)). "Under our abuse of discretion standard of review, we will disturb a ruling only upon finding that 'the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles.'" *Id.* (quoting *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999)). "Put another way, we will not hold a trial court to have abused its discretion unless its decision cannot be located within the range of permissible decisions allowed by a correct application of the facts to the law." *McClure v. Commonwealth*, 457 S.W.3d 728, 730 (Ky. App. 2015) (citing *Miller v. Eldridge*, 146 S.W.3d 909, 915 n.11 (Ky. 2004)).

A circuit court has "broad discretion in overseeing a defendant's [diversion], including any decision to revoke[.]" *Andrews*, 448 S.W.3d at 777. Historically, a circuit court could remove a person from diversion if there was

evidence that the diversioner failed to comply with the conditions of diversion or was not making satisfactory progress toward the completion of the provisions of the diversion agreement. KRS 533.256; *Ballard v. Commonwealth*, 320 S.W.3d 69, 73 (Ky. 2010). The Kentucky General Assembly qualified the circuit court's discretion when it enacted the Public Safety and Offender Accountability Act, commonly referred to as House Bill 463 (HB 463), in 2011. *Andrews*, 448 S.W.3d at 776. With that, and the creation of KRS 439.3106, the General Assembly provided new criteria for voiding diversion.

Specifically, KRS 439.3106 provides as follows:

(1) Supervised individuals shall be subject to:

> (a) Violation revocation proceedings and possible incarceration for failure to comply with the conditions of supervision when such failure constitutes a significant risk to prior victims of the supervised individual or the community at large, and cannot be appropriately managed in the community; or

> (b) Sanctions other than revocation and incarceration as appropriate to the severity of the violation behavior, the risk of future criminal behavior by the offender, and the need for, and availability of, interventions which may assist the offender to remain compliant and crime-free in the community.

Following the implementation of HB 463, to void diversion the trial court must find by a preponderance of evidence: (1) that the diversioner violated a

condition of diversion; (2) that the violation constitutes a significant risk to prior victims or to the community at large; and (3) that the diversioner cannot be appropriately managed in the community. KRS 439.3106; KRS 533.256(1); *Andrews*, 448 S.W.3d at 778-79; *Richardson*, 494 S.W.3d at 499.

With these principles in mind, we note at the onset that addressing what Vannatter now presents on appeal is a moot point. By way of explanation, we must point out that the plain language of KRS 439.3106 requires only one violation to justify voiding diversion and denying probation. Here, the trial court relied on two violations – and thus two alternative grounds. As set forth in its January 20, 2022 order, the trial court determined Vannatter had: (1) absconded from supervision; and (2) continuously failed to pay her child support as set forth above.

"When a judgment is based upon alternative grounds, the judgment must be affirmed on appeal unless both grounds are erroneous." *Milby v. Mears*, 580 S.W.2d 724, 727 (Ky. App. 1979). On appeal, however, Vannatter does not refute or otherwise address the trial court's findings, set forth in its January 20, 2022 order, that she absconded; that in absconding, she violated her diversion; and that this violation "constitute[d] a significant risk to prior victims of the supervised individual or the community at large," and rendered her unable to "be appropriately managed in the community." *See* KRS 439.3106(1). Instead,

-7-

Vannatter's arguments are solely devoted to the proposition that her continued failure to pay child support was not a sufficient reason to void her diversion. Vannatter's failure to address the trial court's determinations regarding her absconding is a confession, on her part, that the trial court did not err in this respect. *See Osborne v. Payne*, 31 S.W.3d 911, 916 (Ky. 2000). Therefore, we must affirm on this basis alone. *Milby*, 580 S.W.2d at 727.

In any event, the arguments Vannatter presents on appeal lack merit. It is uncontested that Vannatter continued failing to pay child support as set forth above. It was therefore her burden to persuade the trial court that her failure did not sufficiently violate her diversion agreement because she "made bona fide efforts to comply with payment conditions but was unable to do so through no fault of h[er] own." *Commonwealth v. Marshall*, 345 S.W.3d 822, 834 (Ky. 2011). In this vein, Vannatter argues she did so. She notes that during the January 18, 2022 revocation hearing, she testified that she was homeless for a time during her period of nonpayment. Furthermore, before losing custody of her children in 2017, she had mostly been a stay-at-home mother with little job experience; she had applied for jobs at fast-food restaurants, gas stations, and Wal-Mart, to no avail, and the various shutdowns that occurred during the height of the COVID-19 pandemic further hindered her job prospects. She also testified as to her belief that her

fiancé's friend could now help her secure employment at a hotel as a housekeeper, and that the position would pay her enough to satisfy her support obligations.

However, after considering the other evidence, the trial court gave little credence to what Vannatter characterized as her bona fide efforts. Specifically, over the course of its oral findings issued from the bench,[3] it noted Vannatter had acknowledged during her testimony that her period of homelessness had been limited to approximately one week in September 2020. The trial court also noted that, despite her limited work experience, Vannatter had been able to secure employment on at least two occasions since 2017. Specifically, Vannatter had worked for a janitorial service from August to November 2019, and she had also worked at a Captain D's restaurant – and voluntarily quit from that position – in July 2020. The trial court noted Vannatter never contacted the child support or probation offices to inform them of any difficulties she may have been having – or for assistance – in securing employment. It took judicial notice that shutdowns of businesses due to COVID-19 had largely ended well before January 18, 2022, and that a multitude of industries were advertising open positions for unskilled workers. It noted Vannatter's admission that, after the trial court had imposed the

---

[3] In the context of revocation proceedings, findings can be either oral or written to satisfy both KRS 439.3106(1) and the defendant's due process rights. *See Commonwealth v. Gilmore*, 587 S.W.3d 627, 630 (Ky. 2019).

supervision condition upon her diversion due to her positive drug test, she had also been arrested for and pleaded guilty to an alcohol-related offense.

The trial court also questioned Vannatter's unsupported claim that her fiancé's friend could now secure employment for her as a hotel housekeeper, finding the timing of her claim dubious. Since 2020, the total amount of child support Vannatter had paid was only $28.29. But now, for the first time, and during a hearing that would determine whether she would be incarcerated, Vannatter represented that she would be able to secure employment without any difficulty at all. According to Vannatter, all she needed to do to obtain the housekeeping job was to show up to the hotel in question and ask for it. Assuming this job existed, the trial court also expressed its reservations, based upon Vannatter's history, with how long Vannatter would choose to keep the job, and with whether Vannatter would voluntarily pay any amount of her wages toward child support.

Weighing the evidence, the trial court determined Vannatter had almost totally failed to fulfill her child support obligations for two years and that she had failed to demonstrate her nonpayment of child support was due to no fault of her own, as opposed to her own lack of effort. *Marshall*, 345 S.W.3d at 834. Weighing the evidence was the trial court's prerogative, and we see no clear error in this respect. *See* Kentucky Rule of Civil Procedure (CR) 52.01.

With that said, the only other aspect of the trial court's judgment Vannatter takes issue with is its additional finding that her continued failure to pay her child support obligations "constituted a significant risk to prior victims of the supervised individual or the community at large," per KRS 439.3106(1). In the pertinent part of her brief, she argues:

> While there is certainly a moral and societal obligation to care for one's children, there was no evidence presented that the children were going without their basic needs being met. The child support order began on October 1, 2017. They remained in their father's care until they were recently moved to foster care due to allegations of abuse and neglect. While the state paying for the care of children is not ideal, this ensures that the children are clothed, housed, and fed properly. If nonpayment harms the child, it makes little sense to send the offending parent to prison where the child has no hope of being supported.

Thus, her argument appears to be two-fold: (1) her nonpayment of child support did not harm her children because other individuals and entities were supporting her children at all relevant times; and (2) incarcerating her for nonpayment of child support will prevent her from *possibly* supporting her children and will thus harm her children in the long run.

Vannatter's former point is not well-taken. In *Embry v. Commonwealth*, 561 S.W.3d 360 (Ky. App. 2018), a father who was on probation for flagrant nonsupport, and who had made "weak at best" efforts to satisfy his ongoing support obligation and arrearage, similarly argued that his probation

-11-

should not be revoked because his continued failure to pay child support did not constitute "a significant risk to prior victims of the supervised individual or the community at large," per KRS 439.3106(1). *Id*. at 363. Disagreeing, the trial court in that matter explained that the father's lack of effort financially victimized both the child, as well as the Commonwealth of Kentucky for monies spent on the child's behalf when the father failed to provide. *Id*. Upon review, this Court found no error or abuse in that respect. *Id*.

Nor do we find any such error or abuse here, as the trial court in this matter rendered analogous oral findings on this issue during the sentencing hearing.[4] Indeed, "Kentucky law imposes a duty upon a parent – and not the state – to support his or her child regardless of whether or not a child support order has been entered against the parent." *C.A.W. v. Cabinet For Health & Family Services*, 391 S.W.3d 400, 406 (Ky. App. 2013) (citation omitted). "Though [KRS 439.3106(1)] clearly requires entry of a finding of 'significant risk,' surely it cannot be further read to require a probationer to commit some heinous act before he can be found to be a risk to someone other than himself. We sincerely doubt the

---

[4] During the sentencing hearing, and relative to this issue, the trial court explained:

> These children are still not being provided for. We need to remember that failure to pay child support victimizes a child. It is not, you know, people look at it as somehow a different crime than other crimes. It is not. If somebody is not paying child support, it is a continuing harm for the victim, which is the person you're supposed to be supporting.

-12-

General Assembly intended to set so high, and potentially injurious, an evidentiary burden." *Embry*, 561 S.W.3d at 363 (quoting *McClure*, 457 S.W.3d at 732).

As for Vannatter's latter point, its premise – taken to its extreme conclusion – is that public policy should not condone imprisoning individuals for failing to support their children; and that doing so is counterintuitive, as it removes any possibility during the term of imprisonment that the parent will support his or her children. However, public policy is embodied in our statutes, and our statutes specify a term of imprisonment for flagrant nonsupport.[5] As set forth previously, the mere possibility or hope that a parent will eventually begin to support their child – standing alone, and in the face of a sustained failure to do so – is an insufficient reason to permit the offending parent to avoid the consequences imposed by the law.

## III. CONCLUSION

The trial court committed no error in voiding Vannatter's diversion, denying her probation, and sentencing her consistently with her prior guilty plea. We therefore affirm.

ALL CONCUR.

---

[5] Flagrant nonsupport is a Class D felony, subject to a term of up to five years' imprisonment. *See* KRS 530.050(6); KRS 532.060(2)(d).

BRIEF FOR APPELLANT:

Jennifer Wade
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Perry T. Ryan
Assistant Attorney General
Frankfort, Kentucky