v.

CABINET FOR HEALTH & FAMILY SERVICES, COMMONWEALTH of Kentucky; B.L.M., an Infant, and S.M.M., an Infant, Appellees.

No. 2012–CA–000875–ME.

Court of Appeals of Kentucky.

Feb. 1, 2013.

Robert J. Bornstein, Louisville, KY, for appellants.

Sarah M. Steele, Louisville, KY, for appellees.

Before DIXON, LAMBERT, and TAYLOR, Judges.

## OPINION

LAMBERT, Judge:

C.A.W. and T.L.M. appeal from the Jefferson Family Court's order terminating their parental rights to their children, B.L.M. and S.M.M. After careful review, we affirm the trial court's orders terminating C.A.W. and T.L.M.'s parental rights.

The instant action commenced on September 7, 2011, when the Cabinet for Health and Family Services (the Cabinet) filed a petition for the involuntary termination of parental rights against C.A.W., the mother, and T.L.M., the father.[1] The trial of the termination action was held on February 28, 2012, and the trial court entered findings of fact and conclusions of law and orders terminating the parental rights of both parents to both children on April 11, 2012.

At trial, the Cabinet presented evidence that on or about September 23, 2009, and again on February 8, 2010, the Cabinet filed verified dependency action petitions regarding B.L.M. and S.M.M., alleging that the children were abused and neglected children within the meaning of Kentucky Revised Statutes (KRS) 600.020(1). The September 23, 2009, petition alleged substantial neglect of the children. The children had been left unsupervised, without adequate food, and the parents acknowledged that their own substance abuse issues limited their ability to appropriately care for the children. At the time of this petition, B.L.M. was almost four years old, and S.M.M. was just two. The father admitted that the children were not fed breakfast or lunch, and the mother stated that she fed the children only when they said they were hungry. As a result of this petition, the children were placed temporarily with an aunt.

In the second petition filed in February 2010, the allegations involved physical abuse of S.M.M., lack of supervision of both children, and the parents' substance abuse issues. At this time, B.L.M. was four-and-a-half and S.M.M. was three years old. S.M.M. was examined for sexual abuse due to her sexually acting out, and the physician noted an imprint on the side of her ear that had been inflicted about four days earlier. The father tested positive for cocaine, and the mother tested positive for alcohol use. At the temporary removal hearing on February 11, 2010, the trial court placed the children in the temporary custody of the Cabinet, in whose care and custody the children have remained to the present date.

At the trial on the termination petition, the caseworker assigned to this family, Vickie Thompson, testified on behalf of the Cabinet. Ms. Thompson testified that the September 23, 2009, petition included allegations that there was no food in the

---

1. C.A.W. and T.L.M. are not married.

home; the children were left unsupervised; the parents have issues with alcohol; the father stated he smoked marijuana; the mother admitted to selling food stamps; the parents have limited education and job skills; and that S.M.M. cut her finger with a knife while the mother was sleeping. She testified that the parents stipulated to abuse or neglect on December 10, 2009, admitting that they had substance abuse issues and that the children were neglected as a result.

Ms. Thompson testified that the second petition was filed on February 8, 2010, due to an act of physical abuse against S.M.M. that occurred during a supervised visitation with the parents while at the home of the paternal grandparents. The parents reported that the child fell while she was running but a doctor concluded that the imprint on the child's face and ear could not have been caused by a fall but had to have been caused by a hard hit. On August 26, 2010, the parents stipulated to abuse or neglect, admitting that due to their lack of supervision of S.M.M., she was injured, causing a bruise to her face/ear. They admitted that their conduct put B.L.M. at risk. As mentioned above, the children were committed to the Cabinet at this time.

Throughout the dependency case, the parents were court ordered to complete multiple services. Ms. Thompson testified that on October 1, 2009, the parents were ordered to participate in supervised visitation; remain clean and sober; comply fully with court orders; complete a psychological assessment and follow recommendations; complete a substance abuse assessment and follow recommendations; and complete parenting classes and follow recommendations.

The mother completed her psychological assessment on October 23, 2009. It stated that she acknowledged emotional struggles and that her intellectual functioning is in the borderline range, which may cause difficulty in appropriately caring for young children without significant help from outside sources. The mother's personality test indicated significant elevations in anxiety and depression and stated that she should be referred for behavioral counseling to address these symptoms. The parenting assessment indicated some deficiency in understanding the developmental needs of children, and she demonstrated elevated abuse potential.

The father's psychological evaluation stated that his cognitive capacity is in the extremely low range, that it would be very difficult for him to appropriately care for children without significant aid, and in-home parenting education services prior to the children's return were strongly recommended.

On December 10, 2009, the parents were court ordered to pay child support; complete random drug screens; attend counseling and follow recommendations; attend and complete parenting classes; and attend supervised visitation through the Children's Place or Catholic Charities. The next two court orders were essentially the same, but included that the father was to complete a Jefferson Alcohol and Drug Abuse Center (JADAC) assessment and follow through with all recommendations. Both parents were ordered to complete parenting classes through Seven Counties; submit to random drug screens; and continue with Alcoholics Anonymous meetings. The mother was to continue individual counseling with Seven Counties until released. Finally, the family court ordered that visitation was contingent upon full compliance with JADAC. These orders were reiterated on August 26, 2010, and October 14, 2010.

Ms. Thompson testified that the court orders were incorporated into case plans

and that the Cabinet conducted several case plan meetings, which the parents attended. Both parents signed the case plans. In addition to the court ordered recommendations, the case plans required the parents to maintain stable housing and income. Regarding compliance with the case plans and court orders, the parents completed psychological assessments but did not fully comply with the recommendations. The father completed the JADAC evening intensive patient program but he tested positive for cocaine shortly after completing that program and failed to enter into a halfway house as recommended due to the cocaine use. The mother tested positive for alcohol use and was not compliant with JADAC assessment recommendations that she enter an outpatient treatment program. Neither of the parents completed parenting classes through Seven Counties—the mother was discharged due to non-compliance and the father failed to attend his intake appointment. Neither parent provided proof of attendance at AA meetings.

As a result of the parents near complete lack of compliance with court orders and case plan recommendations, reasonable efforts to reunify the parents with the children were waived on October 14, 2010.

At the conclusion of the termination hearing, the trial court found that the children would continue to be abused or neglected if returned to parental custody and that termination of parental rights was in their best interest. The trial court found that the children had been stable since their placement with a foster home by the Cabinet and had bonded with their foster parents. The trial court found that while the parents love their children, it is clear that they are unable to provide even minimally acceptable care or supervision, primarily due to their mental limitations. Finally, there is no reasonable expectation of improvement in the parents' ability to parent the children, which is exacerbated by the parents' substance abuse issues. This appeal now follows.

The Kentucky termination statute, KRS 625.090, provides that a circuit court may involuntarily terminate parental rights if the court finds by clear and convincing evidence that a three-pronged test has been met. *Santosky v. Kramer,* 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). First, the child must be abused or neglected, as defined by KRS 600.020. *See* KRS 625.090(1)(a). Second, termination of parental rights must be in the child's best interest. KRS 625.090(1)(b). And third, the court must find at least one of the grounds exist as enumerated in KRS 625.090(2).

■ The trial court has a great deal of discretion in an involuntary termination of parental rights action. *M.P.S. v. Cab't for Human Resources,* 979 S.W.2d 114, 116 (Ky.App.1998). The standard of review in a termination case is confined to the clearly erroneous standard in Kentucky Rules of Civil Procedure (CR) Rule 52.01, based upon clear and convincing evidence, and the findings of fact of the trial court will not be disturbed unless no substantial evidence exists in the record to support its findings. *Id.* at 116; *V.S. v. Commonwealth, Cabinet for Human Resources,* 706 S.W.2d 420, 423 (Ky.App.1986). "Clear and convincing proof does not necessarily mean uncontradicted proof. It is sufficient if there is proof of a probative and substantial nature carrying the weight of evidence sufficient to convince ordinarily prudent minded people." *Rowland v. Holt,* 253 Ky. 718, 70 S.W.2d 5, 9 (1934).

■ The parents' sole argument on appeal is that the Cabinet did not meet its burden of proving by clear and convincing evidence the grounds for termination set

forth in KRS 600.020(1)(f) & (i) and 625.090(1),(2)(e) & (g). We disagree.

The trial court determined that the children were abused or neglected in the dependency actions stemming from the September 23, 2009, and February 8, 2010, petitions. In fact, the parents admitted that the children were neglected as a result of their substance abuse issues. Again on August 26, 2010, the parents admitted that because of their lack of supervision of S.M.M., she was injured and sustained a bruise to her face, which also placed B.L.M. at risk. Finally, the trial court found that both children had been abused or neglected based upon the evidence presented at the termination hearing itself. Thus, while either determination is proper, the trial court determined that the children were abused or neglected in both ways. *See* KRS 625.090(1)(a). ("The child has been adjudged to be an abused or neglected child, as defined in KRS 600.020(1), by a *court of competent jurisdiction*; . . . The child is found to be an abused or neglected child, as defined in KRS 600.020(1) by the Circuit Court in this proceeding. . . .") We find no error in the trial court's determinations, based on the fact that the parents admitted abuse and neglect due to their substance abuse issues, and the trial court's finding in the actual termination proceeding that both children were abused and/or neglected. There is ample evidence in the record to support this finding, and we will not disturb it on appeal.

■ The trial court also properly determined that termination was in the children's best interests pursuant to KRS 625.090(1)(b). In examining a child's best interest, the trial court is required to consider the six factors in KRS 625.090(3):

(a) Mental illness as defined by KRS 202A.011(9), or an intellectual disability as defined by KRS 202B.010(9) of the parent as certified by a qualified mental health professional, which renders the parent consistently unable to care for the immediate and ongoing physical or psychological needs of the child for extended periods of time;

(b) Acts of abuse or neglect as defined in KRS 600.020(1) toward any child in the family;

(c) If the child has been placed with the cabinet, whether the cabinet has, prior to the filing of the petition made reasonable efforts as defined in KRS 620.020 to reunite the child with the parents unless one or more of the circumstances enumerated in KRS 610.127 for not requiring reasonable efforts have been substantiated in a written finding by the District Court;

(d) The efforts and adjustments the parent has made in his circumstances, conduct, or conditions to make it in the child's best interest to return him to his home within a reasonable period of time, considering the age of the child;

(e) The physical, emotional, and mental health of the child and the prospects for the improvement of the child's welfare if termination is ordered; and

(f) The payment or the failure to pay a reasonable portion of substitute physical care and maintenance if financially able to do so.

In the instant case, the trial court considered all of these factors, as detailed in its findings of fact and conclusions of law and order terminating the parents' parental rights. At trial, the mother testified that she had been diagnosed with depression, anxiety, and a nerve disorder. She also stated that a therapist told her she has multiple personality disorder, but testified that she is not in treatment for any disorders and is not currently on her medication.

The trial court noted in its findings that the parents had a psychological assessment in October 2009. The results indicated that the mother had a cognitive capacity in the borderline range. The assessment stated that due to her very limited intellectual functioning, the mother could not raise children without "significant" help. The mother could not understand the developmental delays and stages of child development, and the assessor determined that she was not an appropriate caregiver. The assessment did not recommend reunification, and instead it stated that she had such limited cognitive abilities that it would not be safe to place the children back in her care.

The father's psychological assessment indicated that it would be very difficult for him to appropriately care for these children without substantial aid and indicated that he had low cognitive abilities. The parenting assessment portion of the evaluation also indicated that both parents have personality characteristics found in known child abusers and that both gave responses which indicated elevated abuse potential.

A review of the record and the trial court's above findings indicates that the trial court considered the parents' mental illnesses and cognitive abilities and how such would affect parenting of these children, as required by KRS 625.090(3)(a).

Acts of abuse or neglect toward the children have already been discussed, and the trial court clearly considered such in determining the children's best interests.

The evidence also indicates that the Cabinet made all reasonable efforts to reunite the children with the parents prior to the filing of the underlying TPR action. Over the course of the dependency actions, the Cabinet has offered or provided the parents individual mental health treatment referrals to Seven Counties; substance abuse assessments and treatment referrals through JADAC; random drug screens; supervised visits with their children; psychological assessment referrals, home visits, treatment team planning meetings; and parenting classes. Due to the parents' non-compliance with the treatment services, the trial court waived reasonable efforts on October 14, 2010. The Cabinet's provision of services to these parents was exhaustive, as denoted by the record. The parents' continued disregard for the treatment services indicates that there are no other services the Cabinet could have provided to the parents that would have helped to reunify them with their children.

Clearly the parents did not make reasonable efforts or adjustments to their circumstances to warrant reunification with their children. Although the parents did complete parenting classes through Bridges of Hope in January 2012 and had stable housing as of the termination hearing, they still had not progressed to even supervised visitation with the children. In fact, the parents were originally ordered to complete a more intensive parenting class through Seven Counties in October 1999. Not only did it take over two years to complete any parenting class, the parents also failed to complete the actual class ordered by the trial court. They also failed to complete their substance abuse evaluation recommendations satisfactorily. Both parents failed to follow through with individual mental health counseling and recommendations as court-ordered. As of the time of the termination hearing, the parents were not making any provisions for their children's needs and had not maintained any regular visits or contact with them since September 2010.

While the parents have taken some positive steps, the record indicates that they are just the first steps on the long road toward reunification and were not suffi-

cient adjustments to their circumstances to warrant reunification with their children, especially considering their history of continued substance abuse, mental health concerns, parenting concerns, non-compliance and instability.

The trial court also considered whether the children's welfare would continue to improve upon a termination of parental rights. At the time the children were placed in the care of the Cabinet in February 2010, they were very withdrawn; S.M.M. was very quiet and did not talk; and B.L.M. was quiet and protective of S.M.M., even parenting her to a point. B.L.M. had reported to Ms. Thompson that he remembered taking S.M.M. door to door to beg for food while with their parents. Since coming into the Cabinet's care, both children were placed in counseling, and S.M.M. was referred to speech therapy. Both children were eventually discharged from counseling because they had reached their goals at that time. Ms. Thompson testified that she has observed the children with their foster parents, and both children seem to have formed a very strong bond with the foster parents. She observed that they have become a family and seem to feel secure. KRS 625.090(3)(e) identifies such improvements in a child's welfare to be further indication that it is in the child's best interests for a termination of parental rights to occur.

The trial court also considered whether the parents had paid reasonable child support since the children came into the Cabinet's custody. Although there was some testimony that the father is paying some child support, the support did not come about until there was a court order and his wages were garnished. The parents have not otherwise provided the children with substitute financial assistance, nor have they provided the children with any other provisions such as food, clothing, shelter,

medical, or educational care. The Kentucky public assistance statutes, KRS Chapter 205, *et seq.*, contemplate that a parent must assume the burden of supporting his or her children if physically capable of doing so through any kind of legitimate endeavor, and that the parent may not pass the burden to the state "merely because there are some limitations upon his ability to compete freely in the labor market." *Barnes v. Turner*, 280 S.W.2d 185, 187 (Ky.1955). Kentucky law imposes a duty upon a parent—and not the state—to support his or her child regardless of whether or not a child support order has been entered against the parent. *Id.*

In addition to the requirement that a child be deemed abused or neglected and that termination be in his/her best interests, the trial court must find that at least one of the grounds listed in KRS 625.090(2) also exists.

In the instant case, the children have been in foster care under the responsibility of the Cabinet for fifteen (15) of the most recent twenty-two (22) months preceding filing of the termination action. *See* KRS 625.090(2)(j). The children have been in the Cabinet's custody and control since February 11, 2010. The termination petition was filed eighteen months after the children's removal from their parents. At the time of the hearing, the children had been in the Cabinet's custody and control for over twenty-four months.

Additionally, the trial court found that for a period of not less than six months, and for reasons other than poverty alone, the parents have failed to provide essential parental care and protection for the children, including essential clothing, shelter, medical care, or education. As stated above, while the father apparently did pay some child support, the record indicates that it was minimal and only after his

wages were garnished. There was no consistent payment of child support or any other evidence indicating that the parents provided essential care and protection, including clothing, shelter, medical care, or educational expenses. Accordingly, we find no error with the trial court's finding in this regard.

■ The parents have also abandoned the children for a period of not less than 90 days under KRS 625.090(2)(a). As Ms. Thompson testified, the parents had supervised visitation in October 2009. This supervised visitation continued on a weekly basis at the home of the children's paternal grandparents until S.M.M. was injured in February 2010, when the second abuse or neglect petition was filed. Supervised visitation was again suspended in September 2010, due to the parents' non-compliance with court orders. Thus, the parents have not had any contact with their children since September 2010. Since that time, Ms. Thompson testified that the parents have not inquired into the progress of the children's therapy, nor have they inquired into the children's progress at school. The evidence supports the trial court's finding of abandonment for a period of over ninety days.

■ KRS 625.090(2)(e) and (g) require that the trial court also consider the parents' prognosis for improvement within a reasonable amount of time. KRS 625.090(5) affords the parents the opportunity to prove by a preponderance of the evidence that the children will not continue to be abused or neglected if returned to the parent. The trial court, in its discretion, may determine not to terminate parental rights. In the instant case, the parents did not complete all required substance abuse orders and recommendations; individual counseling services; or parenting classes through Seven Counties. They failed to cooperate fully with the Cabinet and did not maintain regular contact with the children or the social worker. They failed to provide any material support for the children. Thus, it is not reasonable to expect sufficient improvement in the foreseeable future that would justify reunification with B.L.M. and S.M.M. Certainly, the parents have not proved by a preponderance of the evidence that the children will not continue to be abused or neglected, considering the lack of any significant change in the parents' circumstances.

A review of the record in this case indicates that the trial court's findings were supported by substantial evidence. The children were clearly abused and neglected, as defined by Kentucky law and stipulated by the parents. The trial court properly considered the factors to determine that termination was in the children's best interest under KRS 625.090(1)(b). Finally, the trial court found that many of the grounds existed justifying termination as required by KRS 625.090(2). Because the trial court's findings were not clearly erroneous, we will not disturb them on appeal. Accordingly, we affirm the findings of fact and conclusions of law and the orders terminating the parental rights of C.A.W. and T.L.M. to their children, B.L.M. and S.M.M.

ALL CONCUR.